ACCEPTED
06-15-00078-cv
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
12/30/2015 7:05:47 PM
DEBBIE AUTREY
CLERK

## NO. 06-15-00078-CV

_____

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
12/31/2015 9:24:00 AM
DEBBIE AUTREY
Clerk

# IN THE COURT OF APPEALS FOR THE SIXTH DISTRICT OF TEXAS AT TEXARKANA

_____

## TOCHRIL INCORPORATED,
### Appellant

## VS.

## TEXAS WORKFORCE COMMISSION,
### Appellee

_____

## ON APPEAL FROM 53rd JUDICIAL DISTRICT COURT OF TRAVIS COUNTY, TEXAS

_____

## BRIEF OF APPELLANT

_____

JULIANN H. PANAGOS
State Bar No. 06861100
jpanagos@craincaton.com
MICHAEL D. SEALE
State Bar No. 00784938
mseale@craincaton.com
1401 McKinney Street, Suite 1700
Houston, Texas 77010
Telephone: 713-752-8696
Facsimile: 713-658-1921

Counsel for Appellant

**ORAL ARGUMENT REQUESTED**

084891/000006
375 - 1842976v1

## Identity of Parties and Counsel

The following is a complete list of all parties to the trial court judgment, and the names and addresses of all trial and appellate counsel:

| <u>Parties</u> | <u>Counsel</u> |
|---|---|
| Appellant Tochril Incorporated | Juliann H. Panagos<br>Michael D. Seale<br>Crain, Caton & James, P.C.<br>1401 McKinney Street Suite 1700<br>Houston, Texas  77010 |
| Appellee Texas Workforce Commission | Peter E. Laurie<br>Assistant Attorney General<br>Financial and Tax Litigation<br>PO Box 12548<br>Austin, Texas 78711-2548 |

084891/000006
375 - 1842976v1

## Table of Contents

Identity of Parties and Counsel................................................................i

Table of Contents................................................................ ii

Table of Authorities................................................................v

Statement of the Case................................................................ vii

Statement Regarding Oral Argument................................................ viii

Statement Regarding Record References and Hyperlinks.................................. viii

Issues Presented ................................................................ix

**Issue 1**

Health Force included a lenghtly summary of evidence to its response to the motion for summary judgment pursuant to Texas Rule of Evidence 1006, which allows for presentation of summary evidence when the underlying evidence is too voluminous. The underlying sumarized evidence supporting Health Force's summary judgment response was also attached to the response. The TWC filed a motion to strike this summary judgment evidence. The trial court sustained the TWC's objections and struck the evidence. Did the trial court err by excluding Health Force's summary evidence?

**Issue 2**

Did the trial court err in finding the twenty worker classification factors weighed in favor of the TWC?

**Issue 3**

In a 2007 Memorandum of Understanding, the Internal Revenue Service (the "IRS"), Department of Labor (the "DOL") and a number of state workforce agencies (including Texas) agreed to work towards achieving consistent worker classification determinations across state and federal agencies.

ii

084891/000006
375 - 1842976v1

Both the IRS and DOL conducted worker classification audits of the workers offered work opportunities by Health Force and determined the nurses and other professional healthcare providers were independent contractors. In this case, the trial court granted summary judgment for the Texas Workforce Commission finding these same workers were employees of Health Force. Did the trial court erroneously grant summary judgment for the TWC on the issue of worker classification?

Overview ........................................................................................................1

Statement of Facts .........................................................................................1

1.    Background of the Parties.........................................................................1

      A.    Tochril Incorporated ("Health Force")........................................1

      B.    Texas Workforce Commission.....................................................2

2.    Texas Workforce Commission Investigation and Decision .........................3

3.    Procedural History ...................................................................................5

      A.    Suit is filed..................................................................................5

      B.    The motion for summary judgment...............................................6

      C.    Objections to Health Force's summary judgment evidence ..........................................................................................7

      D.    Rulings on evidence and motion for summary judgment ...................8

Summary of the Argument...............................................................................8

Argument.........................................................................................................10

1.    Standard of Review....................................................................................10

2.    The trial court erred in excluding Health Force's summary chart and by ignoring the underlying evidence. .........................................................11

      A.    Use of Summary Evidence for Alonzo and Pappillion Testimony was Proper in this Case. ..................................................12

iii

B.     Alonzo and Pappillion Provided Proper Witness Statements. ...................................................................................16

C.     Alonzo and Pappillion had Personal Knowledge of Relevant Facts. ...............................................................................17

3.     The Twenty Factor Test Demonstrates Genuine Issues of Material Fact     18

A.     Prior Precedent Indicates the Workers are Independent Contractors ...................................................................................18

B.     Review of Health Force's Evidence Demonstrates the Workers were Independent Contractors.........................................................20

4.     The Memorandum of Understanding between the IRS, DOL and State Agencies Favors a Finding that the Health Force Workers are Independent Contractors.................................................................33

A.     The IRS Audit of the Workers .........................................................35

B.     The DOL Audit of the Workers .......................................................36

Conclusion ...................................................................................................37

Certificate of Compliance ..............................................................................38

Certificate of Service .....................................................................................39

Index to Appendix..........................................................................................40

084891/000006
375 - 1842976v1

## Table of Authorities

**Cases**

*Avchen v. Kiddo*, 200 Cal. App.3d 532 (Cal. 1988) ...............................................18

*C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768 (Tex. App.–
Houston [1 Dist.] 2004, no pet.) .................................................................13

*Cascade Nursing v. Employment Security Department*, 856 P.2d 421
(Wash. 1993)................................................................................................18

*Champlin Oil & Ref. Co. v. Chastain,* 403 S.W.2d 376 (Tex.1965) .......................13

*Contract Management Services, Inc. of Texas v. State of Louisiana*,
745 So.2d. 194 (La. Ct. App. 1999) ...........................................................18

*Cooper Petroleum Co. v. LaGloria Oil & Gas Co.,* 436 S.W.2d 889
(Tex.1969) ...................................................................................................13

*Elgin Nursing & Rehabilitation Center v. U.S. Department of Human
Health Services*, 718 F.3d 488 (5th Cir. 2013)...........................................20

*Flutobo, Inc. v. Holloway,* 419 S.W.3d 622 (Tex. App.—Houston
[14th Dist.] 2013, pet. denied)....................................................................11

*Ford Motor Company v. Auto Supply Company, Inc.*, 661 F.2d 1171
(8th Cir.1981) .............................................................................................13

*Goodyear Tire & Rubber Co. v Mayes,* 236 S.W.3d 754 (Tex.2007).....................10

*Guevara v. Lackner,* 447 S.W.3d 566 (Tex. App.-Corpus Christi
2014), reh'g overruled (Dec. 11, 2014)......................................................14

*Health Care Associates, Inc. v. Oklahoma Employment Security
Commission*, 26 P.3d 112 (Okla. 2001)......................................................18

*HRP of Tennessee, Inc. d/b/a Hospital Resources Personnel v. State of
Tennessee, Department of Employment Security,* No. E2005-
01176-COA-R3-CV (Tenn. June 28, 2006) ................................................18

*McAllen State Bank v. Linbeck Construction Corp.*, 695 S.W.2d 10
(Tex.App.–Corpus Christi 1985, writ ref'd n.r.e.) .......................................13

084891/000006
375 - 1842976v1

*Mississippi Employment Security Commission v. PDN, Inc.*, 586 So.2d 838 (Miss. 1991).......................................................................18

*Rosenberg v. Collins*, 624 F.2d 659 (5th Cir.1980)................................13

*Speier v. Webster College,* 616 S.W.2d 617 (Tex. 1981).........................13

*Trucks, Inc. v. Tamez*, 206 S.W.3d 572 (Tex. 2006) ...............................10

**Statutes/Regulations/Other**

20 C.F.R., Section 639.3 ........................................................................34

40 Tex. Admin. Code, Section 815.134........................... 7, 11, 20, 21, 40

40 Tex. Admin. Code, Section 821.5 .....................................................33

Rev. Rul. 87-41, 1987-1 C.B. 296 .........................................................33

Revenue Act of 1978, Section 530 .........................................................36

Small Business Job Protection Act of 1996, Section 1122......................36

Tex. Labor Code, Section 201.029 ...........................................................6

Tex. Labor Code, Section 212.021 ...........................................................5

Tex. Labor Code, Section 213.073 .......................................................... 5

Tex. R. Civ. P., Rule 166a .............................................................. 16-17

Tex. R. Evid. 1006 .............................................................11-13, 16-17

TUCA Section 201.041.................................................................. 15, 18

084891/000006
375 - 1842976v1

## Statement of the Case

*Nature of the Case:*        Worker classification dispute under the Texas Labor Code (the Texas Unemployment Compensation Act).

*Trial Court:*        The Honorable Stephen Yelenosky, 53rd Judicial District Court, Harris County, Texas

*Course of Proceedings:*        Appellant Tochril Incorporated ("Health Force") filed a petition in district court challenging the administrative decision of the Texas Workforce Commission (the "TWC") classifying certain workers offered work opportunities by Health Force as employees (C8). Health Force sought a declaratory judgment that the workers were independent contractors and made a claim for reimbursement of the unemployment taxes it paid to the TWC under protest (C8). The TWC answered the suit (C3) and filed a motion for summary judgment in response to Health Force's claims (C41). Health Force responded to the motion for summary judgment and attached supporting evidence for its claims to the response (C503). The parties exchanged supplemental summary judgment statements (C931 and C1226). The TWC filed objections and motion to strike Health Force's summary judgment evidence (C1394). Health Force filed a response to the TWC's objections and motion to strike its summary judgment evidence (C1417).

*Trial Court's Disposition:*        The trial court sustained most of the TWC's objections and struck most of Health Force's summary judgment evidence (C1505-1517) and granted summary judgment in favor of the TWC (C1518).

vii

084891/000006
375 - 1842976v1

## Statement Regarding Oral Argument

Appellant believes oral argument will assist the Court in dealing with the issues of law raised in this appeal, as well as clarify any factual or procedural questions that arise from this record.

## Statement Regarding Record References and Hyperlinks

The Clerk's Record in this case is one volume labeled Original Clerk's Record. Each page is numbered sequentially. References to the Original Clerk's Record will be shown by "C page number."

Record references to items in the Appendix are hyperlinked (shown by blue underlining), as are two non-Westlaw authorities included in the Appendix.

084891/000006
375 - 1842976v1

# Issues Presented

## Issue 1

Health Force included a lenghtly summary of evidence to its response to the motion for summary judgment pursuant to Texas Rule of Evidence 1006, which allows for presentation of summary evidence when the underlying evidence is too voluminous.[1]  The underlying sumarized evidence supporting Health Force's summary judgment response was also attached to the response.  The TWC filed a motion to strike this summary judgment evidence. The trial court sustained the TWC's objections and struck the evidence.  Did the trial court err by excluding Health Force's summary evidence?

## Issue 2

Did the trial court err in finding the twenty worker classification factors weighed in favor of the TWC?

## Issue 3

In a 2007 Memorandum of Understanding, the Internal Revenue Service (the "IRS"), Department of Labor (the "DOL") and a number of state workforce agencies (including Texas) agreed to work towards achieving consistent worker classification determinations across state and federal agencies.  Both the IRS and DOL conducted worker classification audits of the workers offered work opportunities by Health Force and determined the nurses and other professional healthcare providers were independent contractors.  In this case, the trial court granted summary judgment for the Texas Workforce Commission finding these same workers were employees of Health Force.  Did the trial court erroneously grant summary judgment for the TWC on the issue of worker classification?

---

[1] Eight witnesses were deposed in the underlying case and 5 witnesses testified in the Rule 13 administrative hearing.

084891/000006
375 - 1842976v1

## Overview

This dispute is an appeal of a Texas Workforce Commission (the "TWC") worker classification decision. The issue arose when the TWC conducted an audit of Tochril Incorporated ("Health Force")'s records and business medel to determine if workers offered work opportunities by Health Force were "employees" under the Texas Labor Code. The TWC found the workers to be "employees" and assessed unemployment taxes against Health Force for the workers. Health Force paid the taxes under protest and challenged the TWC's finding and tax assessment in trial court. The TWC filed a motion for summary judgment which the trial court granted. Health Force appealed because the trial court (i) improperly excluded evidence, (ii) ignored the abundant fact issues raised by Health Force in the summary judgment proceeding and (iii) ignored and acted inconsistently with findings made by two federal agencies regarding the same workers.

## Statement of Facts

### 1. Background of the Parties

#### A. Tochril Incorporated ("Health Force")

Health Force is a multi-faceted provider of healthcare related services on a state wide basis and, on a relatively small scale, a provider of ancillary

1

medical/nursing staff relief for its health care and other business clients. Health Force has always maintained unemployment compensation coverage for each of its acknowledged employees. Health Force is comprised of several business segments within the healthcare industry, including the following: (1) Health Force Comprehensive Outpatient Rehabilitation Facility emphasizing unique pediatric rehabilitation services (approximately 20 employees), (2) Health Force Home Health Care (approximately 40 employees) and (3) Health Force Medical Staff Relief (approximately 10 employees). For its medical/nursing staff relief business component, Health Force does business as "Health Force Medical Staff Relief" operating as a referral or placement agency for this purpose. Through an independent contractor relationship, Health Force Medical Staff Relief provides healthcare professionals, specifically Registered Nurses, Licensed Vocational Nurses and Certified Nurse Assistants with opportunities for contract work at healthcare institutions, including hospitals and health care facilities. (C8-C9, C29-30).

B.    **Texas Workforce Commission**

The TWC is a state agency established to operate an integrated workforce development system in Texas through the consolidation of job training, employment and employment-related educational programs and to administer the unemployment compensation insurance program in Texas. (C9).

2

**2.     Texas Workforce Commission Investigation and Decision**

On October 9, 2008, at the request of the TWC, Health Force submitted (1) a TWC Form C-1 (Amended Status Report) and (2) a TWC Form C-102 (Pre-Audit Questionnaire). (C809-C818).   Three weeks later, on October 31, 2008, TWC auditor Mary Zerda concluded her "investigation" and the TWC issued its letter setting forth the results of the purported investigation finding the workers were employees.  (C926).  In her February 23, 2010 deposition, Ms. Zerda concedes she interviewed only three (3) workers **after** she made her October 31, 2008 determination in preparation for the February 19-20, 2009 Rule 13 administrative hearing.  (C570).

The following additional events occurred prior to filing suit in the district court:

- On October 14 and 16, 2008, the TWC issued its TWC Form C-7 Wage List Adjustment Schedules for the period April 1, 2007 through September 30, 2008) (6 quarters).  (C819-C913).

- On October 16, 2008, the TWC issued its TWC Form C-5 Adjustment Reports for the period October 1, 2005 through September 30, 2008) (12 quarters).  (C914-C925).

- On November 14, 2008, the TWC issued its Employer's Default Notice stating Health Force owed a total of $25,677.99 of which approximately $20,291.06 was assessed taxes and approximately $5,386.93 was interest assessed on the taxes.  (C927).

- On November 25, 2008, Health Force requested an administrative Rule 13 hearing regarding the miscalculated and incorrect assessment of unemployment taxes for its independent contractors. (C928-C929).

3

- On December 3, 2008, the TWC issued its administrative determination that unemployment taxes were owed for Health Force's independent contractors. (C930).

- On December 15, 2008, the TWC issued its Statement of Employer Account insisting the assessment of unemployment taxes for Health Force's contractors was due and owing. (C546).

- On December 29, 2008, Health Force paid under protest, duress and business compulsion, the miscalculated and incorrect amounts for taxes (including interest) for 12 calendar quarters from October 1, 2005 through September 30, 2008. Health Force simultaneously requested a refund of all such tax payments and interest payments it made. (C547-C548). Health Force appealed to the TWC for a refund, but the refund request was denied through the TWC's May 13, 2009 decision. (C928-C929 and C552-C563).

On May 13, 2009, the TWC Commissioners issued their decision making an administrative finding approximately 600 workers for whom Health Force was compelled to pay taxes for 12 calendar quarters from October 1, 2005 through September 30, 2008 were employees and not independent contractors. (C552-C563). The May 13, 2009 decision also denied Health Force's request for a refund and adjustment of miscalculated taxes Health Force was compelled to pay by stating "[Health Force, Inc.] has paid outstanding taxes due on all workers, including Debra Franklin, and asks for a refund of the taxes paid" and "[u]nemployment insurance contributions, plus penalties accrued and incurred, are payable to the Texas Workforce Commission." (C555 and C562).

4

The May 13, 2009 decision was a split decision, with TWC Chairman Tom Pauken issuing a dissent in favor of independent contractor status stating:

I dissent from the decision of the majority in this case.

The nurses in question are not subject to the direction and control of the company, may determine their own shifts, and pay for their own professional licenses. They are already experienced professionals and do not require training. Further, it is important to note that any supervision of these professionals by doctors or charge nurses is more for the appearance under specific state practice laws than a reflection of practical reality. Finally, the company's role was that of a broker of services, rather than as an employer of these licensed professionals. Given that other states have found that similar professionals are not employed by such services, and that there is no published Texas court decision on this issue, I believe the Tax Department position is without clear legal basis. Under these circumstances, I do not believe that the registered nurses, licensed vocational nurses, and the certified assistants are in the company's employment.

For the above reasons, I respectfully dissent from the decision of my fellow Commissioners. (C563).

Health Force subsequently challenged the decision of the TWC in an Austin district court. (C8-C40).

### 3. **Procedural History**

#### A. **Suit is filed**

On November 12, 2010, Plaintiff Health Force filed its First Amended Original Petition. (C8). The petition alleged a suit under (a) Section 213.073 of the Texas Labor Code to recover a refund of miscalculated taxes Health Force was compelled to pay and (b) Section 212.021 of the Texas Labor Code to obtain

5

declaratory relief (i) for violation of the United States and Texas Constitutions and the Texas Administrative Code, and (ii) to require the TWC to properly classify Health Force's independent contractors and refrain from assessing miscalculated taxes. The TWC answered the suit (C3).

**B.     The motion for summary judgment**

The TWC filed a Motion for Summary Judgment on October 25, 2013. (C41).  It sought to dismiss Health Force's claims and award judgment for the TWC.  The TWC alleged three grounds for why Health Force's claims should be dismissed: (i) Health Force is a "temporary help firm" required to pay unemployment taxes under Section 201.029 of the Texas Labor Code, (ii) Health Force cannot overcome the presumption that the workers are employees under the Texas Labor Code, and (iii) Health Force's common law claims are redundant of its statutory causes of action and such common law claims are barred by sovereign immunity.

On December 12, 2013, Health Force responded to the motion for summary judgment. (C503).  In conjunction with its response, Health Force attached worker declarations, deposition testimony, IRS documents, the TWC hearing transcript and other evidence to demonstrate the TWC did not meet its burden of showing that there was no genuine issue of material fact.  The body of the response also contained a summary chart of the TWC Rule 13 hearing where, pursuant to Texas

6

084891/000006
375 - 1842976v1

Rule of Evidence 1006, Health Force summarized the testimony of a Health Force employees Holly Alonzo and Lita Pappillion.

The parties exchanged supplemental briefing in late July and early August of 2015. (C931 and C1226). In Health Force's supplemental response, it attached additional worker testimony and another chart summarizing the testimony of five additional workers deposed in the case after the initial motion for summary and response were filed. (C1226). Health Force relied on this testimony to demonstrate material fact issues existed under application of the Twenty Factor Test mandated under Section 815.134 of the Texas Administrative Code.

## C. Objections to Health Force's summary judgment evidence

The TWC filed objections to and motion to strike Health Force's summary judgment evidence on August 18, 2015. (C1395). The objections focused on striking the summary chart used by Health Force in its response and striking the testimony of Holly Alonzo, Chief Operating Officer of Health Force and Lita Pappillion, President of Health Force, on various grounds including a failure to include detailed citations to their testimony. Other objections included striking alleged conclusory statements in the twenty worker affidavits attached to Health Force's response and striking portions of counsel for Health Force, Michael Seale's affidavit. Health Force responded to the objections on August 19, 2015. (C1417).

7

**D.      Rulings on evidence and motion for summary judgment**

The trial court ruled of the objections in late August 2015. (C1505). In its ruling, the trial court struck the summary charts, the testimony of Alonzo and Pappillion, portions of the 20 declarations, and portions of Michael Seale's affidavit. Without such evidence, the court also ruled on the TWC's motion for summary judgement, granting the motion and dismissing Health Force's suit. (C1518). This appeal followed. (C1519).

## <u>Summary of the Argument</u>

The decision of the trial court should be reversed because the trial court (i) improperly excluded evidence, (ii) ignored the abundant fact issues raised by Health Force in the summary judgment proceeding and (iii) ignored and acted inconsistently with findings made by two federal agencies regarding the same workers.

Texas law mandates summary judgment should only be granted if there is no genuine issue of material fact. When reviewing a determination of an administrative agency, the court should provide a certain level of deference to the agency, however, this deference is not absolute. If it was, an administrative agency would allow an agency to function not only as judge, but jury and executioner.

Health Force's response to the TWC's motion for summary judgment contains a chart summarizing the testimony of the President and Chief Operating

8

Officer of Health Force. The chart walked the trial court through the testimony of these executives at a TWC hearing and applied the executives' testimony to the Twenty Factor analysis required to be examined in a worker classification case. The TWC objected to the evidence on numerous grounds, but essentially because the summary chart did not contain proper citations to record testimony. The trial court sustained the objections. The Texas Rules of Civil Procedure only require a nonmovant to point the evidence and the Texas Rules of Evidence allow for the summary of testimony. Therefore, this evidence should have been considered and the TWC's motion for summary judgment should have been denied.

Even if this court determines that the summary chart evidence should be excluded, Health Force presented further evidence in its supplemental response after the deposition of five additional workers. This evidence was <u>not</u> struck by the trial court. This worker testimony on each of the Twenty Factors alone demonstrates that there is a genuine issue of material fact.

Apart from the testimonial evidence presented by Health Force, Health Force attached audit investigation findings from two federal agencies, the IRS and DOL. Both of these agencies found the workers to be independent contractors. Based upon a Memorandum of Understanding between Texas, the IRS and DOL which notes the importance of consistency in tax determinations, the trial court should have made a closer examination at the TWC's decision (made after a three

9

week investigation) that is inconsistent with the IRS and DOL investigations collectively lasting 49 months. The failure to do so is a failure to recognize genuine issues of material fact.

For these reasons, the TWC's motion for summary judgment should have been denied.

## Argument

### 1.     Standard of Review

Summary judgments are reviewed de novo and this Court must consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.[2] The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence.[3] In a traditional motion for summary judgment, if the movant's motion and summary judgment evidence factually establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary

---

[2] *Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

[3] *Goodyear Tire & Rubber Co. v Mayes,* 236 S.W.3d 754, 755 (Tex.2007).

10

judgment.[4]  The non-movant "is not required to marshal [his] proof; [his] response need only point out evidence that raises a fact issue on the challenged elements."[5]

## 2.    The Trial Court Erred in Excluding Health Force's Summary Chart and by Ignoring the Underlying Evidence.

In both its response to the TWC's motion for summary judgment and its supplemental brief, Health Force incorporated charts summarizing the testimony of 13 witnesses under Texas Rule of Evidence 1006. (C503 and C1226).  The charts demonstrate the testimony of these witnesses is consistent with an independent contractor classification when compared to the twenty worker classification factors found in Section 815.134 of the Texas Administrative Code ("Twenty Factor Test").  The TWC and the trial court were required to review the Twenty Factor Test as part of their inquiry into the relationship between Health Force and its worker.

The TWC did not dispute the accuracy of Health Force's summaries. Instead, the TWC filed an objection to the use of the first summary chart arguing the following:

---

[4]  *Flutobo, Inc. v. Holloway,* 419 S.W.3d 622, 629-30 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

[5]  *Tex. R. Civ. P. 166a(i) cmt.1.*

084891/000006
375 - 1842976v1

- Statements attributed to Alonzo and Pappillion do not reference summary judgment evidence.

- Objections to summary of testimony under Tex. R. Evid. 1006.

- Alonzo and Pappillion have not provided proper witness statements.

- Alonzo and Pappillion have not demonstrated that they have personal knowledge of relevant facts.

(C1394). The trial court sustained the TWC's objections and struck the summary evidence (C1505). Texas Rule of Evidence 1006 allows for the use of summary evidence (even a summary of testimony), the trial court erred in excluding this vital evidence.

### A. Use of Summary Evidence for Alonzo and Pappillion Testimony was Proper in this Case.

Texas Rule of Evidence 1006 states:

The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

084891/000006
375 - 1842976v1

Texas courts recognize the value in allowing the use of summary evidence especially when the underlying records supporting the summary are voluminous.[6] Many courts have found charts and diagrams that summarize, or perhaps emphasize, testimony are admissible if the underlying information is admissible.[7] As illustrated above, the main requirement for a summary chart under Texas Rule of Evidence 1006 is that the underlying records must be available for inspection by the opposing counsel. The court may require the party presenting the summary to produce all of the underlying records.[8] (In this case, Health Force attached the summarized testimony the TWC already had it in its possession long before the summary judgment hearing.)

---

[6] *See Speier v. Webster College,* 616 S.W.2d 617, 618–19 (Tex.1981) (charts and diagrams that summarize testimony are admissible if the underlying information has been admitted into evidence); *Ford Motor Company v. Auto Supply Company, Inc*., 661 F.2d 1171, 1176 (8th Cir.1981) (trial court properly admitted into evidence product line profitability analyses made annually and compiled from numerous "spread sheets"); *Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir.1980) (trial court properly admitted a summary of the commodity firm's yearly trading activities); *C.M. Asfahl Agency v. Tensor, Inc*., 135 S.W.3d 768, 800 (Tex. App.–Houston [1 Dist.] 2004, no pet.) (one page summary of eighty-seven pages of supporting data was admissible if it upheld the standards of TRE 1006 and was prepared by a qualified individual); c.f. *McAllen State Bank v. Linbeck Construction Corp*., 695 S.W.2d 10, 16 (Tex.App.–Corpus Christi 1985, writ ref'd n.r.e.) (trial court admitted into evidence two computer printout summary breakdowns, each a summary of underlying labor and material records; the court held that the printouts were entitled to be treated as business records, a not just as summaries of business records).

[7] *See Speier v. Webster College, 616 S.W.2d 617, 618–19 (Tex.1981); Cooper Petroleum Co. v. LaGloria Oil & Gas Co.,* 436 S.W.2d 889, 891 (Tex.1969)*; Champlin Oil & Ref. Co. v. Chastain,* 403 S.W.2d 376, 389 (Tex.1965).

[8] *See id.*

084891/000006
375 - 1842976v1

To defeat a motion for summary judgment, the non-movant "is not required to marshal [his] proof; [his] response need only point out evidence that raises a fact issue on the challenged elements."[9] Attaching an entire document or deposition to a response to a motion for summary judgment and referencing them only generally does not relieve the party of the need to point out to the trial court where in the documents the issues set forth in the response are raised.[10] The requirement to point out portions of evidence prevents parties from casually referring to voluminous evidence (e.g. *see* attached deposition testimony) and creates a level of efficiency for the court to make its decision.

In this case, Health Force's response went well beyond a casual reference to hearing testimony as the TWC implies. Health Force prepared two summary charts to assist the trial court in examining the Twenty Factor Test.[11] The first chart contained both direct quotations and summary of the testimony of Health Force's President and Chief Operating Officer from the February 19, 2009 administrative hearing before the TWC. Health Force also attached the hearing testimony to its response in order to make the document available to the TWC.

---

[9] *Tex. R. Civ. P. 166a(i) cmt.1.*

[10] *Guevara v. Lackner,* 447 S.W.3d 566, 572 (Tex. App.-Corpus Christi 2014), reh'g overruled (Dec. 11, 2014).

[11] *See Appendix 1 and 2.*

14

The TWC's objection focused on the fact that Health Force did not provide direct citations to the pages and lines where the quoted and other summarized testimony is found in the attached transcripts.[12] Texas Rule of Civil Procedure 166a(i) at its comment 1 simply requires a party point to the testimony. This rule was not intended to provide a party with the ability to escape the substance of testimony on a mere technicality. Health Force's summary chart meets the spirit of Texas Rule of Civil Procedure 166a and the trial court erred in excluding it.

The chart provided in Health Force's supplemental response did contain direct citations to the testimony of five worker witnesses.[13] While this chart was challenged in the TWC's objections and motion to strike, it appears the trial court ignored this evidence. As will be discussed in Section 3 below, both of the charts overwhelmingly demonstrate a genuine issue of material fact existed with regard to the issue of workers classification on each of the Twenty Factors.[14]

---

[12] The TWC does not contest any transcript quotation or point to any transcript quotation to be an inaccurate quotation. The transcripts are in the possession of the TWC and are searchable.

[13] *See* Appendix 2.

[14] Application of the Twenty Factors to a particular worker or class of workers is intended to determine whether such worker (or class of similarly situated workers) "has been and will continue to be free from control or direction under the contract and in fact" and therefore not an employee under Section 201.041 of the Texas Unemployment Compensation Act.

15

**B.      Alonzo and Pappillion Provided Proper Witness Statements.**

The witness statements of Alonzo and Pappillion are proper evidence and are authenticated by the Declaration of Juliann H. Panagos. (C737-C739). As stated, Health Force provided a summary chart in its response pursuant to Texas Rule of Evidence 1006. The entire transcribed record of the February 19, 2009 hearing was also attached to the response along with the court reporter's certificate. Juliann H. Panagos authenticated these records by making the following statement in her affidavit attached to the response:

> 7.      I attended the February 19, 2009 TWC Rule 13 hearing before Hearing Officer Thomas Mann. **A copy of the February 19-20, 2009 hearing transcript (the "Transcript") is attached to this Declaration as Exhibit D(S).** I prepared a summary of (a) the hearing testimony given by witnesses [Pappillion, Alonzo and TWC auditor Mary Zerda] on the Twenty Factors and (b) the TWC discovery responses regarding the Twenty Factors. In accordance with Rule 1006 of the Texas Rules of Evidence, this summary is necessary because the "voluminous underlying materials" (the Transcript) cannot conveniently be examined by the Court. **A copy of the summary is attached to this Declaration as Exhibit D(6). A copy of the TWC's March 18, 2010 Letter Responses to Health Force's Discovery Requests is attached to this Declaration as Exhibit D(7).**

In addition, Health Force complied with Texas Rule of Civil Procedure 166a(d) providing:

> **Appendices, References and Other Use of Discovery Not Otherwise on File.**
> Discovery products not on file with the clerk may be used as summary judgment evidence if copies of the material, appendices containing the evidence, or a notice containing specific references to the discovery or specific references to other instruments, are filed and served on all

16

parties together with a statement of intent to use the specified discovery as summary judgment proofs: (i) at least twenty-one days before the hearing if such proofs are to be used to support the summary judgment; or (ii) at least seven days before the hearing if such proofs are to be used to oppose the summary judgment.

The TWC did not allege that the first summary chart was inaccurate. The TWC is merely trying to create a technicality in order to exclude critical evidence that creates clear fact issues in this case. Because the spirit of both Texas Rule of Civil Procedure 166a and Texas Rule of Evidence 1006 were met, the trial court erred in excluding the summary chart and testimony of Alonzo and Pappillion.

## C. Alonzo and Pappillion had Personal Knowledge of Relevant Facts.

At the February 19, 2009 Rule 13 hearing, both Alonzo and Pappillion were placed under oath and testified to their personal knowledge, experience and operations of Health Force.[15] In sum, for the above described reasons, the testimony and summary chart containing the testimony of Alonzo and Pappillion were improperly excluded in this case. Such evidence was important evidence to Health Force's claims. The trial court erred in excluding this evidence and such error caused the rendition of an incorrect judgment in favor of the TWC.

---

[15] *See* C593-C643 (Pappillion Rule 13 hearing transcript pp. 107-12 et seq.; *See* Pappillion Rule 13 hearing transcript pp. 45-47 et seq.).

17

084891/000006
375 - 1842976v1

**3.** **The Twenty Factor Test Demonstrates Genuine Issues of Material Fact**

As stated above, summary judgment should not be granted if there is a genuine issue of material fact. Through its various responses and associated evidence, Health Force demonstrated that genuine issues of material fact existed under each of the Twenty Factors with regard to the workers offered work opportunities by Health Force.

**A.** **Prior Precedent Indicates the Workers are Independent Contractors**

Courts finding hospital workers to be independent contractors is not without precedent. There are at least seven states that have addressed cases involving nurse workers, unemployment tax and the application of the "control or direction" standard under virtually identical statutes to the TUCA Section 201.041.[16] In most or all circumstances, the judicial courts overturned the state unemployment commission's assessment of unemployment tax against the referral/placement agency and classification of the workers as employees.

---

[16] *HRP of Tennessee, Inc. d/b/a Hospital Resources Personnel v. State of Tennessee, Department of Employment Security,* No. E2005-01176-COA-R3-CV (Tenn. June 28, 2006); *Mississippi Employment Security Commission v. PDN, Inc*., 586 So.2d 838 (Miss. 1991); *Health Care Associates, Inc. v. Oklahoma Employment Security Commission*, 26 P.3d 112 (Okla. 2001); *Contract Management Services, Inc. of Texas v. State of Louisiana*, 745 So.2d. 194 (La. Ct. App. 1999); *Avchen v. Kiddo*, 200 Cal. App.3d 532 (Cal. 1988); *Cascade Nursing v. Employment Security Department*, 856 P.2d 421 (Wash. 1993).

18

Indeed, **three of the workers the TWC determined were employees and for whom Health Force paid associated taxes under protest had been previously determined to be independent contractors by the TWC**:

- On January 14, 2009, the TWC issued its Appeal Tribunal Decision in Appeal No. 10897280102 regarding worker Debra Franklin. After an evidentiary hearing, the TWC found Ms. Franklin was an independent contractor and thus, not entitled to unemployment benefits. (C575-C580).

- On September 11, 2009, the TWC issued its Appeal Tribunal Decision in Appeal No. 1122881-1-1 regarding worker Lucy Reyna. After an evidentiary hearing, the TWC found Ms. Reyna was an independent contractor and thus, not entitled to unemployment benefits. (C582-C585).

- On October 29, 2009, the TWC issued its Appeal Tribunal Decision in Appeal No. 1206651-1-1 involving worker Maria Guzman. After an evidentiary hearing, the TWC found Ms. Guzman was an independent contractor and thus, not entitled to unemployment benefits. (C587-C589).

(C513-C514). The TWC collected unemployment taxes from Health Force for these three nurses. However, when the nurses filed for unemployment benefits, after three evidentiary administrative hearings, the TWC found the nurses to be independent contractors. These three workers are identically situated to the approximately 600 hospital staff workers that were found to be "employees" by the TWC on October 31, 2009.

19

084891/000006
375 - 1842976v1

**B. Review of Health Force's Evidence Demonstrates the Workers were Independent Contractors**

The trial court was imbued with the power to review the TWC's decision to classify all approximately 600 workers as "employees." As stated by the Fifth Circuit Court of Appeals regarding a Texas state agency's interpretation of its own statute:

> …granting deference to [the agency]'s interpretation…would leave no role for the courts—taken to its logical conclusion, it could effectively insulate agency action from judicial review. It is not within the province of the Executive Branch to determine the final meaning of a vague document…any more than it would be to interpret the final meaning of a contract entered into by the Executive Branch…[and] would allow agencies to punish "wrongdoers" without first giving fair notice of the wrong to be avoided.
>
> ***
>
> Affording deference to agency interpretations…would allow the agency to function not only as judge, jury, and executioner...[17]

In all instances, the TWC must satisfy the Twenty Factor Test found in Section 815.134 of the Texas Administrative Code. There is no presumption of employment, rebuttable or otherwise, under TUCA or Texas case law upon payment alone to a worker.[18] In all instances, the TWC must satisfy the Twenty Factor Test and the trial court must verify the TWC correct applied the Twenty Factor Test.

---

[17] *Elgin Nursing & Rehabilitation Center v. U.S. Department of Human Health Services*, 718 F.3d 488 (5th Cir. 2013) found at http://www.ca5.uscourts.gov/opinions/pub/12/12-60086-CV0.wdp.pdf.

[18] If there was such a presumption, simply paying an individual to mow a lawn would make the worker an employee of the homeowner.

084891/000006
375 - 1842976v1

It appears, however, when granting summary judgment, the trial court overlooked or discounted many of the genuine fact issues raised by Health Force's evidence. For example, the second summary chart above contains testimony from five workers.[19] This testimony creates genuine issues of material facts, since many of the factors point to an independent contractor relationship. In the testimony of Kay Strahan alone (C1251-C1264 and C1339-C1366), the following factors favored a finding of independent contractor relationship:

| Factor<br>40 TAC Section 815.134 | Kay Strahan<br>Testimony |
|---|---|
| 1. Instructions:<br>An **Employee** receives instructions about when, where and how the work is performed.<br>An **Independent Contractor** does the job his or her own way with few, if any, instructions as to the details or methods of the work.<br><br>1. Instructions: An employee must comply with instructions about when, where, and how to work. Even if no instructions are given, the control factor is present if the employer has the right to give instructions. | LVNs are subcontractors. They work when they want, if they want, and where they want.[20] |
| 2. Training: | Doesn't recall any training provided by Health Force.[21] |

---

[19] *See* Appendix 1.

[20] *See* Appendix 2 (Kay Strahan Testimony, Tr. p. 69).

21

084891/000006
375 - 1842976v1

| Factor<br>40 TAC Section 815.134 | Kay Strahan<br>Testimony |
|---|---|
| **Employees** are often trained by a more experienced **Employee** or are required to attend meetings or take training courses.<br><br>**An Independent Contractor** uses his or her own methods and thus need not receive training from the purchaser of those services.<br><br>2. Training: An employee is trained to perform services in a particular manner, independent contractors ordinarily use their own methods and receive no training from the purchasers of their services. | |
| 3. Integration:<br>Services of an **Employee** are usually merged into the firm's overall operation; the firm's success depends on those **Employee** services.<br>An **Independent Contractor's** services are usually separate from the client's business and are not integrated or merged into it.<br><br>3. Integration: An employee's services are integrated into the | Did not spend much time at the Health Force office. Mainly, would stop by to drop off time sheets or pick up a check.[22] |

---

[21] *See* Appendix 2 (Kay Strahan Testimony, Tr. p. 97).

[22] *See* Appendix 2 (Kay Strahan Testimony, Tr. pp. 63-65).

084891/000006<br>375 - 1842976v1

| Factor<br>40 TAC Section 815.134 | Kay Strahan<br>Testimony |
|---|---|
| business operations because the services are important to the success or continuation of the business. This shows that the employee is subject to direction and control. Integration of worker's services in the business operation of Health Force generally indicated that the worker is subject to control or direction. The corporation Health Force is principally engaged in a nurse placement business. | |
| <u>4. Services Rendered Personally:</u><br>An **Employee's** services must be rendered personally; **Employees** do not hire their own substitutes or delegate work to them.<br>A true **Independent Contractor** is able to assign another to do the job in his or her place and need not perform services personally.<br><br><u>4. Services Rendered Personally:</u><br>An employee renders services personally. This shows that the employer is interested in the methods as well as the results. | |
| <u>5. Hiring, Supervising & Paying Helpers:</u><br>An **Employee** may act as a foreman for the employer but, if so, helpers are paid with the employer's funds.<br>**Independent Contractors** select, hire, pay and supervise any helpers used and are responsible for the results of the helpers' labor. | |

23

| Factor 40 TAC Section 815.134 | Kay Strahan Testimony |
|---|---|
| 5. Hiring Assistants: An employee works for an employer who hires, supervises, and pays assistants. An independent contractor hires, supervises, and pays assistants under a contract that requires him/her to provide materials and labor and to be responsible only for the results. Nurses cannot hire assistants to do patient care for them. | |
| 6. Continuing Relationship: An **Employee** often continues to work for the same employer month after month or year after year. An **Independent Contractor** is usually hired to do one job of limited or indefinite duration and has no expectation of continuing work.<br><br>6. Continuing Relationship: An employee has a continuing relationship with an employer. A continuing relationship many exist where work is performed at frequently recurring although irregular intervals. | Could have worked for other placement companies or hospitals.[23]<br><br>Declined employment opportunities at hospitals because he would lose the independence he had at Health Force.[24] |

---

[23] *See* Appendix 2 (Kay Strahan Testimony, Tr. pp. 77-78).

[24] *See* Appendix 2 (Kay Strahan Testimony, Tr. pp. 77-78).

24

084891/000006
375 - 1842976v1

| Factor<br>40 TAC Section 815.134 | Kay Strahan<br>Testimony |
|---|---|
| 7. Set Hours of Work:<br>An **Employee** may work "on call" or during hours and days as set by the employer.<br>A true **Independent Contractor** is the master of his or her own time and works the days and hours he or she chooses.<br><br>7. Set Hours of Work: An employee has set hours or work established by an employer. An independent contractor is the master of his or her own time. | "[I] provide my own schedule. They [Health Force] do not provide a schedule for me."[25] |
| 8. Full Time Required:<br>An **Employee** ordinarily devotes full-time service to the employer, or the employer may have a priority on the employee's time.<br>A true **Independent Contractor** cannot be required to devote full-time service to one firm exclusively.<br><br>8. Full Time Work: An employee normally works full time for an employer. An independent contractor can work when and for whom he or she chooses. Nurses are worker 30, 40, and even 60 hours a week this constitutes full | LVNs are subcontractors. They work when they want, if they want, and where they want.[26]<br><br>Could have worked for other placement companies or hospitals.[27] |

---

[25] *See* Appendix 2 (Kay Strahan Testimony, Tr. pp. 38, 43-44).

[26] *See* Appendix 2 (Kay Strahan Testimony, Tr. p. 69).

[27] *See* Appendix 2 (Kay Strahan Testimony, Tr. pp. 77-78).

084891/000006
375 - 1842976v1

| Factor<br>40 TAC Section 815.134 | Kay Strahan<br>Testimony |
|---|---|
| time. | |
| 9. Location where services performed.<br>**Employment** is indicated if the employer has the right to mandate where services are performed.<br>**Independent Contractors** ordinarily work where they choose. The workplace may be away from the client's premises.<br><br>9. Work Done on Premises: An employee works on the premises of an employer, or works on a route or at a location designated by an employer. | LVNs are subcontractors. They work when they want, if they want, and where they want.[28] |
| 10. Order or Sequence Set:<br>An **Employee** performs services in the order or sequence set by the employer. This shows control by the employer.<br>A true **Independent Contractor** is concerned only with the finished product and sets his or her own order or sequence of work.<br><br>10. Order or Sequence Set: Employee must perform services in the order or sequence set by an employer. This shows that the employee is subject to direction and control. Nurses are not permitted to | Health Force does not direct LVNs how to do their job.[29] |

---

[28] *See* Appendix 2 (Kay Strahan Testimony, Tr. p. 69).

[29] *See* Appendix 2 (Kay Strahan Testimony, Tr. pp. 131-132).

26

| Factor 40 TAC Section 815.134 | Kay Strahan Testimony |
|---|---|
| follow his/her own pattern of work but rather must follow the established routines/schedules of the facilities. | |
| 11.  Oral or Written Reports: An **Employee** may be required to submit regular oral or written reports about the work in progress. An **Independent Contractor** is usually not required to submit regular oral or written reports about the work in progress.<br><br>11.  Reports:  Employee submits reports to an employer.  This shows that the employee must account to the employer for his or her actions. | |
| 12.  Payment by the Hour, Week or Month: An **Employee** is typically paid by the employer in regular amounts at stated intervals, such as by the hour or week. An **Independent Contractor** is normally paid by the job either a negotiated flat rate or upon submission of a bid.<br><br>12.  Payments:  Employees are paid by the hour, week or month.  Nurses are paid through Health Force. | Hospitals pay Tochril and Tochril pays the LVNs after taking out a referral fee.[30] |
| 13.  Payment of Business & Travel | Health Force does not pay for CPR |

---

[30] *See* Appendix 2 (Kay Strahan Testimony, Tr. p. 37).

084891/000006
375 - 1842976v1

| Factor 40 TAC Section 815.134 | Kay Strahan Testimony |
|---|---|
| Expenses: An **Employee**'s business and travel expenses are either paid directly or reimbursed by the employer. **Independent Contractors** normally pay all of their own business and travel expenses without reimbursement.<br><br>13. Expenses: An employee's business and travel expenses are paid by an employer. This shows that the employee is subject to regulation and control. | and LVN licenses.[31]<br><br>Provides his own transportation. Not reimbursed for any business expenses by Health Force.[32] |
| 14. Furnishing Tools & Equipment: **Employee**s are furnished all necessary tools, materials and equipment by their employer. An **Independent Contractor** ordinarily provides all of the tools and equipment necessary to complete the job.<br><br>14. Tools and Materials: An employee is furnished significant tools, materials, and other equipment by an employer. | Provides his own transportation. Not reimbursed for any business expenses by Health Force.[33] |
| 15. Significant Investment: An **Employee** generally has little or no investment in the business. | Invests in business by buying uniforms, cellphone, blood pressure cuff, stethoscope, and shoes.[34] |

[31] *See* Appendix 2 (Kay Strahan Testimony, Tr. p. 97).

[32] *See* Appendix 2 (Kay Strahan Testimony, Tr. p. 54).

[33] *See* Appendix 2 (Kay Strahan Testimony, Tr. p. 54).

[34] *See* Appendix 2 (Kay Strahan Testimony, Tr. pp. 56-58).

28

084891/000006
375 - 1842976v1

| Factor<br>40 TAC Section 815.134 | Kay Strahan<br>Testimony |
|---|---|
| Instead, an **Employee** is economically dependent on the employer.<br>True **Independent Contractor**s usually have a substantial financial investment in their independent business.<br>15. Investment: An independent contractor has a significant investment in the facilities he/she uses in performing services for someone else. | Provides own transportation to assignments.[35] |
| 16. Realize Profit or Loss:<br>An **Employee** does not ordinarily realize a profit or loss in the business. Rather, **Employee**s are paid for services rendered.<br>An **Independent Contractor** can either realize a profit or suffer a loss depending on the management of expenses and revenues.<br><br>16. Profit or Loss: An independent contractor can make a profit or suffer a loss. | Could lose money if hospital cancels her shift.[36] |
| 17. Working For More Than One Firm At A Time:<br>An **Employee** ordinarily works for one employer at a time and may be prohibited from joining a competitor. | LVNs are subcontractors. They work when they want, if they want, and where they want.[37]<br><br>Could have worked for other placement companies or hospitals.[38] |

---

[35] *See* Appendix 2 (Kay Strahan Testimony, Tr. p. 54).

[36] *See* Appendix 2 (Kay Strahan Testimony, Tr. pp. 94-95).

[37] *See* Appendix 2 (Kay Strahan Testimony, Tr. p. 69).

29

| Factor<br>40 TAC Section 815.134 | Kay Strahan<br>Testimony |
|---|---|
| An **Independent Contractor** often works for more than one client or firm at the same time and is not subject to a non-competition rule.<br><br>17.   Works For More Than One Person or Firm:   An independent contractor gives his/her services to two or more unrelated persons or firms at the same time. | |
| 18.   Making Service Available to the Public:<br>An **Employee** does not make his or her services available to the public except through the employer's company.<br>An **Independent Contractor** may advertise, carry business cards, hand out a shingle or hold a separate business license.<br><br>18.   Offer Services to General Public:   An independent contractor makes his/her services available to the general public or more unrelated persons or firms at the same time. | No advertising budget. He will sometimes buy gifts for coworkers as a form of advertising.[39] |

---

[38] *See* Appendix 2 (Kay Strahan Testimony, Tr. pp. 77-78).

[39] *See* Appendix 2 (Kay Strahan Testimony, Tr. pp. 40-41).

084891/000006
375 - 1842976v1

| | |
|---|---|
| 19. Right to Discharge Without Liability:[40]<br><br>An **Employee** can be discharged at any time without liability on the employer's part.<br>If the work meets the contract terms, an **Independent Contractor** cannot be fired without liability for breach of contract.<br><br>19. Right to Fire: An employee can be fired by an employer. An independent contractor cannot be fired so long as he or she produces a result that meets the specifications of the contract. | |
| 20. Right To Quit Without Liability:**41** | |

---

[40] At the Rule 13 hearing, Health Force's CEO Holly Alonzo testified:

> Q. If you were to discharge a nurse in the middle of the job, could that nurse sue your company and hold you financially liable?
> A. We don't discharge, so, they are aware that there is no relationship; just come and go, work as you please.

C512; February 19, 2009 Holly Alonzo Rule 13 Hearing Testimony, Tr. p. 39; 2013 Response p. 27.

[41] At the Rule 13 hearing, Health Force's CEO Holly Alonzo testified:

> Q. If the worker accepts a shift as offered by the hospital, is that worker expected to work that shift?
> A. They're expected, but, that, at many times, cannot happen, or does not happen. They have the right to accept a shift and cancel it.
> Q. What happens if they do cancel?
> A. They don't get paid, obviously, for the shift, but, there's no repercussions as far as discipline.
>
> ***
>
> Q. If a nurse quits in the middle of the job, can your company sue that nurse and hold that nurse financially liable?
> A. No. But, I mean, as a licensed individual, they can get in big trouble; it's abandonment of patients. But, you know, that's through the state.

31

| | |
|---|---|
| An **Employee** may quit work at any time without liability on the **Employee**'s part. An **Independent Contractor** is legally responsible for job completion and, on quitting, becomes liable for breach of contract. | |
| 20. Right To Quit: An employee can quit his/her job at any time without incurring liability. An independent contractor usually agrees to complete a specific job and is responsible for its satisfactory completion, or is legally obligated to make good for failure to complete it. | |

Health Force counts at least 15 of Twenty Factors listed above weigh in favor of an independent contractor relationship between Health Force and Kay Strahan. The similarly cited testimony of the other four workers demonstrates a similar number of factors weighing in favor of a finding the worker are independent contractors.[42] The above testimony and summary chart were not objected to by the TWC (see C1394) and struck by the trial court. Therefore, this uncontested evidence confirms there are genuine issues of material fact in this

C512; February 19, 2009 Holly Alonzo Rule 13 Hearing Testimony, Tr. pp. 37-39; 2013 Response p. 28.

[42] *See* Appendix 2.

084891/000006
375 - 1842976v1

case. Even if this Court upholds the ruling by the trial court striking other evidence, there are numerous portions of Health Force's summary charts and the worker declarations that were filed, admissible and weigh heavily in favor of finding the workers were independent contractors.

The trial court thus erred in granting summary judgment in favor of the TWC.

**4.** **The Memorandum of Understanding between the IRS, DOL and State Agencies Favors a Finding that the Health Force Workers are Independent Contractors.**

Beyond the failure to consider important evidence in the summary judgment proceeding, the need to create consistency with other agency interpretations compels a finding that the workers are independent contractors. The IRS and the DOL both audited Health Force's records and business model. Both agencies determined Health Force workers to be independent contractors for tax purposes. The TWC should be compelled to follow such precedent. It is important to note both the IRS and the TWC use the same Twenty Factors to classify workers as either employees or independent contractors.[43] The DOL and state and federal courts use the "economic reality test" which is a partial list of five of the same

_____

[43] *See* Rev. Rul. 87-41, 1987-1 C.B. 296 (providing guidance with respect to Section 530 of the Revenue Act of 1978); 40 Tex. Admin. Code § 821.5.

33

Twenty Factors with the remaining Twenty Factors collapsed into one factor "the degree of control exercised by the alleged employer."[44]

In a November 2007 Information on the Questionable Employment Tax Practices Memorandum of Understanding (the "MOU"), the IRS, the DOL and a number of state workforce agencies agreed to be consistent with worker classification determinations.[45] The MOU enables agencies to share information and coordinate enforcement efforts with states in order to "create a level playing for all employers" and ensure employees receive the protections to which they are entitled under federal and state law, e.g., proper overtime compensation, FICA and Unemployment Insurance taxes or workers' compensation premiums. Twenty-nine states, including Texas, have signed the MOU. The MOU states its important objectives:

> The IRS and the states will strive to be consistent with their examination results, reducing the chances that states might classify a worker as an employee while the IRS classifies the worker as an independent contractor, or vice versa.
>
> ***
>
> [F]ocus on reducing taxpayer burden and confusion, promote fairness and confidence in the tax system.

---

[44] 20 C.F.R. § 639.3(a)(2) and United States Department of Labor WH Publication 1297 (5 DOL Factors).

[45] C543-C545 (*See* IRS November 2007 Information on the Questionable Employment Tax Practices Memorandum of Understanding).

34

(Emphasis added).

State and federal laws are not designed or intended to foster inconsistencies to financially punish a company. Requiring Health Force, or any business, to treat and classify the same workers differently under the Texas Unemployment Compensation Act ("TUCA") (i.e., as employees) than under the Fair Labor Standards Act and Internal Revenue Code (i.e., as independent contractors) forces Health Force to maintain two sets of financial and payroll related records and reports.[46] Given current governmental policies favoring and encouraging uniformity in the treatment and classification of the same workers by all governing agencies, the TWC's position that the workers are Health Force's employees and not independent contractors for purposes of TUCA and unemployment taxes is irrational and wrong. Such a result would require Health Force to treat the same workers differently for purposes of complying with TUCA where employment taxes and wage and hour obligations for the same workers are not required by the IRS, the DOL or any other governmental agency.

## A.    The IRS Audit of the Workers

On April 4, 2012, the IRS issued its Summary of Employment Tax Examination (IRS Form 4666). The Form 4666 reflects findings made by IRS agent Maureen Molyneaux regarding her 34 month audit of Health Force. The IRS

---

[46] For example, Health Force is not required to pay Federal Unemployment Tax Contributions ("FUTA"), but is being asked to pay state unemployment taxes for the same workers.

35

084891/000006
375 - 1842976v1

audit reviewed the independent contractor worker classification status of the nurses and other healthcare providers contracting with Health Force for work opportunities. After an investigation using, examining and applying the same or substantially the same Twenty Factors,[47] after close to three years, the IRS made the following determination:

> The examination of [Health Force] employment tax returns as reflected on this report [Form 4666 Summary of Employment Tax Examination] included an examination for employment tax purposes of whether any individuals should be treated as employees of the taxpayer [Health Force] for the purpose of Section 530 of the Revenue Act of 1978, as amended by Section 1122 of the Small Business Job Protection Act of 1996. The examination concluded that the following classes of workers should not be treated as employees: Hospital staffing workers.[48]

According to the IRS, Health Force properly classifies the Workers as independent contractors.

## B. The DOL Audit of the Workers

In addition to and consistent with the IRS's determination, on March 29, 2012, the DOL informed Health Force it completed its 15 month wage and hour

---

[47] As opposed to Mary Zerda's investigation undertaken in large part after she made her October 31, 2008 determination (HF 0011) in preparation for the February 19-20, 2009 Rule 13 hearing. C567-C574 (*See* November 23, 2010 Deposition of Mary Zerda pp. 36-37, 77 ("Q. And that's something you consider in your investigation, what the...worker considers herself to be? A. Yes" and on January 23, 2009, one of the three workers told Ms. Zerda "self-employed, prefer to be self-employed")).

[48] C538-C545 (*See* Declaration of Michael D. Seale 3; Form 4666 (HF 753-54)). Note Ms. Molyneaux's handwritten note on the first page of Form 4666 (C541): "Mike [Seale]. My group manager said this should suffice for informing you or TWC, etc. that we looked at Staff relief Worker, but did not reclassify them. Maureen."

36

compliance audit involving the workers provided work opportunities by Health Force. The DOL did not request or demand that Health Force make any changes to the independent contractor status of the workers or any other business or operational practices.[49]

According to the DOL, Health Force properly classifies the Workers as independent contractors.

## **Conclusion**

The trial court granted summary judgment for the TWC. In doing so, it the trial judge improperly struck important evidence and ruled without considering the numerous fact issues shown in the testimony of the numerous workers and two Health Force employees. There is no basis for sustaining the grant of a motion for summary judgment in favor of the TWC in this case because it did not establish there are no genuine issues of material fact regarding the Twenty Factors as a matter of law.

The proceeding in this Court involves three overlapping issues. Evidence was improperly struck by the trial court and should be considered in determining whether the workers are independent contractors. The Twenty Factor Test the trial court and the TWC are required to apply under the Texas Administrative Code demonstrates that genuine issues of material fact exist. Lastly, the TWC should

---

[49] C538-C545 (Declaration of Michael D. Seale).

084891/000006
375 - 1842976v1

maintain consistency with the determinations of the IRS and DOL. As both the IRS and DOL found the workers to be independent contractors, the trial court erred in failing to overturn the TWC's decision.

Each of the above legal principles provides a basis for this Court to reverse and remand this case back to the trial court. Appellant Tochril Incorporated requests that relief and any further relief to which it may be entitled.

Respectfully submitted,

/s/ *Juliann H. Panagos*
JULIANN H. PANAGOS
State Bar No. 06861100
jpanagos@craincaton.com
MICHAEL D. SEALE
State Bar No. 00784938
mseale@craincaton.com
1401 McKinney Street, Suite 1700
Houston, Texas 77010
Telephone: 713-752-8696
Facsimile: 713-658-1921

*Counsel for Appellant*

## Certificate of Compliance

Pursuant to TRAP 9.4(i)(3), the undersigned certifies that this document, excluding those parts not counted pursuant to TRAP 9.4(i)(1) contains 8,161 words.

/s/ Juliann H. Panagos
Juliann H. Panagos

38

## Certificate of Service

I certify that a true and correct copy of this document has been served on the following counsel of record through the electronic filing manager on December 30, 2015:

Peter E. Laurie
Assistant Attorney General
Financial and Tax Litigation
PO Box 12548
Austin, Texas 78711-2548

/s/ Juliann H. Panagos
Juliann H. Panagos

39

084891/000006
375 - 1842976v1

# Index to Appendix

1.      Twenty Factor Chart – Alonzo and Papillion Testimony (C515-C530).

2.      Twenty Factor Chart – Sabala, Sifuentes, Chapman, Strahan and Rojas Testimony (C1251-C1265).

3.      Orders on the Texas Workforce Commission's Objections to Plaintiff's Summary Judgment Evidence (C1505-C1517).

4.      Order Granting Texas Workforce Commission's Motion for Summary Judgment (C1518).

5.      40 Tex. Admin. Code § 815.134.

6.      40 Tex. Admin. Code § 821.5

7.      T.R.C.P. 166a

8.      Tex. R. Evid. 1006

9.      20 C.F.R. § 639.3

10.     Rev. Rul. 87-41, 1987-1 CB 296

084891/000006
375 - 1842976v1

## C. Fact Issues Regarding the Twenty Factors

In its Motion, and without citation to any authority, the TWC incorrectly states "…under the plain language of TUCA [Section 201.041], once workers are paid any remuneration for their services, those workers are presumed to be employees of the remunerating employer." There is no presumption of employment, rebuttable or otherwise, under TUCA or Texas case law upon payment alone to a worker.[28] In all instances, the TWC must satisfy the Twenty Factor test.

Health Force creates facts issues on each of the Twenty Factors identified by the TWC in its Motion[29] as follows:[30]

| Factor 40 TAC Section 815.134 vs. TWC 03-18-10 Letter | Holly Alonzo | Lita Pappillion | Mary Zerda (Bates No. Indicated Hearing Transcript Page No.) | TWC Discovery Responses (3-18-10 Letter Responses) |
|---|---|---|---|---|
| 1. Instructions: An **Employee** receives instructions about when, where and how the work is performed. An **Independent Contractor** does the job his or her own way with few, if any, instructions as to the details or methods of the work.<br><br>1. Instructions: An employee must comply with instructions about when, where, and how to work. Even if no instructions are given, the control factor is present if the employer has the right to give instructions. | If a nurse has a problem while working at a facility and doesn't know how to handle that problem, the nurse will go to someone at the facility to resolve it (e.g. doctor, charge nurse, HR, etc.). We have no policies addressing how the workers are to dress, where to smoke, drug use, etc.<br><br>The facilities, however, likely do maintain such policies. Health Force does not counsel or provide discipline or instruction on any type of work | On a sporadic and informal basis, I go out and visit these facilities that we send the nurses to for work. I visit the nurses as well, but it is nothing set in advance. I see the nurses a little more regularly because they come in and out of here with wanting to be paid for their services.<br><br>I don't have meetings. I may drop in there to see a nurse, more for marketing of home health care services because our patients come from these facilities. Keeping a good relationship with the nurses in the facility is my goal, how are you, whoever's there who I talk to; nothing formal, no meetings. The typical scenario is I go in there with a bag of cookies and drop it off at the | | Facts: The nurses referred by Health Force are instructed as to when and where there services are required. Once the nurse reports to work they are supervised in the performance of their services by either a charge nurse or a house nurse supervisor, both of whom are employees of the medical facility where the services are performed. |

---

[28] If there was such a presumption, simply paying an individual to mow a lawn would make the worker an employee of the homeowner.

[29] Motion Section V(C) pp. 24-31.

[30] In accordance with Rule 1006 of the Texas Rules of Evidence, the following Twenty Factors chart is a summary of the testimony presented at the February 19-20, 2013 administrative hearing (the "Summary Chart"). The summary is necessary because the "voluminous underlying materials" (the transcript) cannot conveniently be examined by the Court. *See* Declaration of Juliann H. Panagos ¶ 7, attached as Exhibit D; February 19-20, 2009 hearing transcript, attached as Exhibit D(5); Summary Chart, attached as Exhibit D(6); TWC's March 18, 2010 Letter Responses to Health Force's Discovery Requests, attached as Exhibit D(7).

Page 13

| Factor<br>40 TAC Section 815.134<br>vs.<br>TWC 03-18-10 Letter | Holly Alonzo | Lita Pappillion | Mary Zerda<br>(Bates No. Indicated Hearing<br>Transcript Page No.) | TWC Discovery<br>Responses<br>(3-18-10 Letter<br>Responses) |
|---|---|---|---|---|
| | performance relating to services provided by the nurse workers.<br><br>No hiring process because they're not employees. We do have them fill out certain paperwork to verify credentials as licensed professionals. Paperwork completed consists of health info, e.g. TB questionnaires, immunization records, work references to verify licensure history. We obtain information such as names, addresses, phone numbers, driver's license numbers, Social Security, tax ID numbers for tax purposes and issue 1099s. They're not required to complete anything that they choose not to. They seek our services. For credentialing purposes, they can provide a resume if desired. An application seeks current and prior employment history and references to verify they are licensed professionals.<br><br>We don't do interviews with them, but we do ask them for their preferences as far as where do they like to go, what shifts do they like to work so we can better fill their needs.<br><br>Tochril does not have a leave of absence policy for the nurses. If the nurse wants a day off or is ill, he or she does not have to call in or request it, but it is wise to call if cancellation is necessary to maintain | nurses' station. Pretty much whoever is there is who I see.<br><br>I did not go there to supervise any of the independent contracting nurses. We market to them, as well as to their facilities. More than anything, we like to see the patients of those facilities, ultimately, be patients of Health Force. | | |

Page 14

084891/000006<br>140 - 958691v1

516

| Factor 40 TAC Section 815.134 vs. TWC 03-18-10 Letter | Holly Alonzo | Lita Pappillion | Mary Zerda (Bates No. Indicated Hearing Transcript Page No.) | TWC Discovery Responses (3-18-10 Letter Responses) |
|---|---|---|---|---|
| | good business relations. We do not set work related deadlines for the nurses. Unsure about any facility imposed deadlines.<br>They are not subject to the policies and procedures that our employees are subject to. | | | |
| **2. Training:**<br>**Employees** are often trained by a more experienced **Employee** or are required to attend meetings or take training courses.<br>**An Independent Contractor** uses his or her own methods and thus need not receive training from the purchaser of those services.<br><br>2. Training: An employee is trained to perform services in a particular manner, independent contractors ordinarily use their own methods and receive no training from the purchasers of their services. | We do not provide any kind of training or related manuals to the nurses. I don't know if or to what extent the hospitals, doctors or nursing homes provide any training. We do not hold regular meetings with the nurses or give instructions to the workers on how they do their work.<br><br>The doctors and charge nurses at the facilities provide general instructions to the nurses, such as location of lunchroom, smoking policies, parking policies, general information about the facility, or any strange or uncommon policies within their facility, but instructions on their duties is dictated by the Texas Board of Nursing and licensure rules.<br>I assume (but don't know for sure) the facilities have medical protocols they ask the nurses to follow, including patient care instructions.<br>Tochril does not provide any orientation prior to offering an opportunity for a nurse to work at a particular facility or hospital. | | | Facts: Nurses are licensed and have accomplished sufficient training and passed state testing. Health Force places nurses in shifts and facilities to provide nursing services within the scope of their authorized practice and as requested by the health facility. Nurses may be provided training at the facilities on facility procedures. |

Page 15

084891/000006
140 - 958691v1

517

| | | | | |
|---|---|---|---|---|
| 3. Integration: Services of an **Employee** are usually merged into the firm's overall operation; the firm's success depends on those **Employee** services. An **Independent Contractor's** services are usually separate from the client's business and are not integrated or merged into it.<br><br>3. Integration: An employee's services are integrated into the business operations because the services are important to the success or continuation of the business. This shows that the employee is subject to direction and control. Integration of worker's services in the business operation of Health Force generally indicated that the worker is subject to control or direction. The corporation Health Force is principally engaged in a nurse placement business. | If Health Force Medical Staff Relief is unable to work through its independent contractors, there would be no significant impact on the overall business of Tochril. Tochril does not employ any nurses at Health Force Medical Staff Relief. The 10 employees that we have are non-nurse, which is clerical staff. Neither I nor Lita Pappillion is a nurse. State regulations require nurses to have photo identification while working in a medical facility. That is their badge with their photo ID on it. Some facilities require they carry their nursing license and their CPR while working. | We regard the staff relief aspect of Tochril's business primarily as a way to market or cross-sell Tochril's primary business purpose. Tochril, of course, uses many other methods to market or cross-sell it's business, the business of Health Force. For example, we may have home health staff cross-sell pediatric rehab services through the care provided home health services. Health Force's business would not be significantly diminished if the company no longer provided staff relief services.<br><br>Our website has an employment opportunities web page available to the general public. If one was interested in applying, they could apply online for home health and rehab positions. There is nothing about medical staffing on the employment opportunity page . | Bates No. 0677<br>The nurses said they worked continuously as they were called for assignments. They work at a rate set by Health Force and not the facility.<br><br>MZ also bases the importance of the staffing unit on the wages reported to TWC and the 1099s provided by the company.<br><br>Bates No. 0716<br>The fact that Health Force pays money to advertise and exerts efforts in locating these nurses also indicates integration.<br><br>Bates No. 0718<br>Independent contractors advertise on their own and negotiate their own contracts. These nurses are not negotiating their own contracts with the facilities. It is clear that if they did, they would be making a profit, not going through a third person.<br><br>[Comments: Using MZ's logic, a nurse dealing directly with the facilities makes them a contractor whereas they are an employee if they go through Health Force. What happened to the delegation theory i.e. transfer of direction and control?]<br><br>Bates No. 0688<br>The integration of the workers into the business, operations of the business, and services were rendered personally, the continuum relationship, employer/employee relationship, set work hours. The work was done at the premises of the facilities that the medical staff relief was instructed to attend. The payments, expenses, tools, materials, investment, profit and loss were rendered personally, whether they offer their services to the general public.<br><br>Bates No. 0711<br>They have the right to fire, the | Facts: Integration of workers' services in the business operation of Health Force generally indicated that the worker is subject to control or direction. Health Force is principally engaged in a nurse placement business. A form provided showing set rates that RN's, LVN's & CNA's are paid. They do not get to negotiate the rate with the facilities. Health Force bills the facilities for the services provided by said nurses. Health Force pays the nurses. Nurses wear a badge to identify themselves as Health Force nurses. Without the nurses Health Force Medical Staff Relief Division would not be in operation. |

Page 16

| | | | right to quit, whether they work for more than one person or firm.

Bates No. 0717
The definition that the commission goes by to identify independent contractors are integrated into the common factors.

Information was not provided in regards to the integration factor other than what the nurses said they worked and were continuously called for assignments. The integration is clear that Health Force is making a profit, by having the nurses and sending them out for assignments.

Bates No. 0683, 0685
Zerda's two witnesses both indicated that they wore badges identifying themselves and they have continuous contact with Health Force. If any changes as far as addresses, phone numbers, or changes in the schedules they contact Health Force. | |

| 4. Services Rendered Personally: | The nurses can | The nurses may delegate or | The following documents or | Facts: Health Force |
|---|---|---|---|---|
| An **Employee's** services must be rendered personally; **Employees** do not hire their own substitutes or delegate work to them. A true **Independent Contractor** is able to assign another to do the job in his or her place and need not perform services personally.

4. Services Rendered Personally: An employee renders services personally. This shows that the employer is interested in the methods as well as the results. | subcontract or delegate the staff relief work out to someone else in place of the nurse. The facility needs a nurse. They really do not care which agency. They need a nurse to take care of their patients. | subcontract the work. The nurses that come through us to utilize the services that we provide to them are independent contractors. If the nurse that chooses to work selects another nurse to work in her stead, and we have records on that nurse, that nurse can get a check from us. She could also send it through another staffing agency. She can contact another nurse from any other source. The hospital gets staff from multiple sources. These nurses are able to substitute however they desire. If the initial nurse and the substitute nurse are both registered with us, then whoever works, we just get told who to pay. If they, however, substitute that same shift through another agency or through another nurse that's independent, then, that is not our issue. | information support the factor that services were provided personally:

Bates No. 0681
Time sheets submitted to Health Force and signed by the individual nurses stating the dates and times worked. If they turn in the time record to someone else they work under and report to when they are assigned to a facility (i.e. Health Force), the nurse is an Health Force employee.

Bates No. 0681
Time sheets are submitted and copies of the sheets are signed by individual nurses stating the dates and times that were worked.

Bates No. 0682
If a person goes to a personnel staffing service or Goodwin Personnel to be sent on an assignment then they would be | nurses render his/her services personally. |

Page 17

| | | | Goodwin Personnel employee. | |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 5. Hiring, Supervising & Paying Helpers: An **Employee** may act as a foreman for the employer but, if so, helpers are paid with the employer's funds. **Independent Contractors** select, hire, pay and supervise any helpers used and are responsible for the results of the helpers' labor.<br><br>5. Hiring Assistants: An employee works for an employer who hires, supervises, and pays assistants. An independent contractor hires, supervises, and pays assistants under a contract that requires him/her to provide materials and labor and to be responsible only for the results. Nurses cannot hire assistants to do patient care for them. | Some nurse workers have assistants or helpers, some do not. For example, they keep up with all their information for tax purposes, sort of like their own little CPA or their own little person who keeps up with the whole business aspect - bookkeeping, mileage, travel expenses, business expenses. | | Bates No. 0718 Nurses do not hire staff or helpers and independent contractors advertise on their own. They are not able to negotiate their own contracts with the facilities. Nurses are not negotiating their own contracts with the facilities. If independent contractors negotiate the contracts with the facilities, they would make a profit. They have a right to hire assistance, the nurses, or staff under them to bring in revenue for profit and loss. They maintain their own place of business. | Facts: Nurses cannot hire assistants to do patient care for them. Nurses provide the services themselves. |

| | | | | |
|---|---|---|---|---|
| 6. Continuing Relationship: An **Employee** often continues to work for the same employer month after month or year after year. An **Independent Contractor** is usually hired to do one job of limited or indefinite duration and has no expectation of continuing work.<br><br>6. Continuing Relationship: An employee has a continuing relationship with an employer. A continuing relationship many exist where work is performed at frequently recurring although irregular intervals. | The nurse contractors do not work exclusively through Tochril or at the same facility month after month or year after year. Some of them may work only one shift and then they go away for a while and come back. We have no control over it. Tochril enters into written contracts with the nurses. Tochril does not enter into a new contract each time a nurse works at a facility. However, the relationship between Health Force and the nurses is based strictly on a contractual relationship. We provide numerous opportunities for nurses throughout south Texas to provide services at the facilities. The written contract | | Bates No. 0684-6 The nurses wear a badge that says Health Force on it, they turn in time sheets to Health Force and sign independent contractor agreements. The nurses are being contacted by Health Force. They go through an initial interview with Health Force. Background information is investigated by Health Force. They're not given a choice if they want to be employees or not, only the choice of whether they want taxes deducted. The nurses have continuous contact with Health Force and contact Health Force when there are any changes in addresses, phone numbers or schedules they're going to work. Health Force also provides workers' comp and liability insurance. They are not providing it for themselves. (I do know employers and non-employers can voluntarily provide workers' compensation | Facts: Nurses remain on Health Force list for referrals and are in continued contact with Health Force and Health Force with the nurses. This resembles an employer-employee relationship. Nurses are referred for shifts over a continued period of time. Nurses can be referred to multiple shifts and to multiple clients. A new contract is not signed with the nurses with each new referral. |

Page 18

| | | | |
|---|---|---|---|
| | confirms they are independent contractors, not employees. | | insurance to whoever they want).<br><br>[Comments: MZ is incorrect – Health Force does not pay for the nurses' liability insurance.]<br><br>Bates No. 0683<br>From the two nurses there is a continuing relationship as far as the time sheets, the contract agreement that was signed and the facility's agreement. | |

| | | | | |
|---|---|---|---|---|
| 7. Set Hours of Work:<br>An **Employee** may work "on call" or during hours and days as set by the employer.<br>A true **Independent Contractor** is the master of his or her own time and works the days and hours he or she chooses.<br><br>7. Set Hours of Work:<br>An employee has set hours or work established by an employer. An independent contractor is the master of his or her own time. | The workers may work shift by shift at their choosing. We don't assign them to a particular shift or series of shifts - we give them opportunities to work. We have no control whether they choose to work a shift, multiple shifts in a row or several days in a row as that is their choice and, at times, when they go to facilities, they schedule themselves. We don't have knowledge of it, and that's fine because they work for themselves.<br><br>Work shifts vary, but typically 6 A.M. to 6 P.M. There is no "typical" or average number of hours worked; some nurses work once a year, some work once a week. It can be anywhere from zero to 60 plus. | | Bates No. 0688<br>Health Force is instructing the nurse that if they take the assignment, to go at a certain hour or shift and it's going to extend to a certain hour and a certain location. Thus, Health Force is setting the time, date and the facility where they are working. The hospitals call Health Force. The hospitals are the ones in need of the nurses and Health Force provides that need to them.<br><br>Bates No. 0688<br>Health Force is giving the nurses instruction to take the assignments or shifts and it extends to a certain hour and a certain location. Health Force is setting the time, date, and the facility that they are working.<br><br>Bates No. 0689<br>Health Force can't change the instructions provided by the hospital. If Health Force changes the instructions from the hospital the hospital will probably go somewhere else to find someone to work the shift that is needed Health Force has a contract with the hospital. The hospitals call Health Force and are the ones that need nurses. | Facts: Nurses are called by Health Force with predetermined time/place/date of where worker needs to report to. This work schedule is set by Health Force clients. This factor indicates control or direction because it bars the worker from being master of his/her own time. The evidence shows that the medical facilities set the hours for the workers. The clients tell Health Force when it needs a worker, what shift the worker is needed for, and the time/place for the worker to report. This shows that through delegation to their clients, Health Force sets the hours of work for the nurses, and also constitutes evidence of an employment relationship. |

| | | | | |
|---|---|---|---|---|
| 8. Full Time Required:<br>An **Employee** ordinarily devotes full-time service to the employer, or the employer may have a priority on the employee's time. | The nurses' work schedule is what they choose it to be, which could be any number of hours, day or night, and at one facility or at many facilities. | | Bates No. 0687<br>Zerda's interviews with the nurses where full-time nurses who were taking assignments. And were working to earn extra money. This makes them an employee in this relationship. | Facts: Nurses work 30, 40, or even 60 hours a week and constitutes full time. The evidence shows that some nurses have full time employment and are picking up shifts for extra |

Page 19

| A true **Independent Contractor** cannot be required to devote full-time service to one firm exclusively.<br><br>8. Full Time Work: An employee normally works full time for an employer. An independent contractor can work when and for whom he or she chooses. Nurses are worker 30, 40, and even 60 hours a week this constitutes full time. | The doctor, hospital or nursing home will inform us what work is available. We then call the nurse and let them know what work the facility requests. The nurses can either choose to accept what the facility offers, be late or even earlier. It's their choice. | | Bates No. 0712<br>By the restrictions of the hours that they can work for Health Force. | money. Others are just working on referrals through Health Force and can picking up as many as 60 hours. Shifts are 12 hours and nurses can reject a shift with Health Force calls but are expected to work if shift is accepted. |
|---|---|---|---|---|
| 9. Location where services performed. **Employment** is indicated if the employer has the right to mandate where services are performed. **Independent Contractors** ordinarily work where they choose. The workplace may be away from the client's premises.<br><br>9. Work Done on Premises: An employee works on the premises of an employer, or works on a route or at a location designated by an employer. | If the nurses choose, we may refer them to the same client hospital, doctor or nursing home more than once. We give them the opportunity. The location of work is mandated by location of the patients and patient care. | | Bates No. 0690-1<br>Health Force has a contract with the facility to provide the nurses as needed. While Health Force is not a hospital, it is an employment agency for these nurses to go and work and make extra money. I agree the nurse's can say "no, I'm not going," but this is no different than what employees can do if the employer agrees to it.<br><br>Bates No. 0691<br>MZ contends it depends on the understanding or guidelines whether one can be fired in a traditional employment sense if the nurse tells Health Force he/she is not coming to work for e.g. a month. MZ believes Health Force can hire a nurse as an employee and provide work hours flexibility to the nurse, allowing the nurse to choose what hours they're going to work.<br><br>[Comment: MZ does not recognize the greater the work flexibility becomes, the less "direction and control" there is.]<br><br>Bates No. 0688<br>Health Force is giving nurses the instruction to take the assignments and to go at a certain hour or shift. It could extend to a certain hour and a certain location. Health Force is in fact setting the time, date, and the facility that they are working. | Facts: Nurses are expected to show up at the facility for the shift they have accepted to work. All work is done at the facilities where assigned and all work is done in person. Nurses wear a badge to identify themselves with their name and Health Force appears on the badge. |
| 10. Order or Sequence Set: | Tochril does not set the order or sequence of the | | | Facts: Nurses are required to follows the order and |

Page 20

084891/000006
140 - 958691v1

| | | | | |
|---|---|---|---|---|
| An **Employee** performs services in the order or sequence set by the employer. This shows control by the employer. A true **Independent Contractor** is concerned only with the finished product and sets his or her own order or sequence of work.<br><br>10. Order or Sequence Set: Employee must perform services in the order or sequence set by an employer. This shows that the employee is subject to direction and control. Nurses are not permitted to follow his/her own pattern of work but rather must follow the established routines/schedules of the facilities. | nurse workers' tasks. Not sure about the doctors and facilities - they could. As nurses, they have to keep their license. There are certain things they have to comply with under licensure laws and I assume the facility nurses and doctors will do this to comply with the law. | | | sequence set by the head nurse or facility. The order or sequence of work is delegated to Health Force clients and is evidence of control and direction through delegation. |
| 11. Oral or Written Reports:<br>An **Employee** may be required to submit regular oral or written reports about the work in progress.<br>An **Independent Contractor** is usually not required to submit regular oral or written reports about the work in progress.<br><br>11. Reports: Employee submits reports to an employer. This shows that the employee must account to the employer for his or her actions. | The nurses are not required to provide reports or logs to Tochril, the facilities or doctors regarding the work they do. | | | Facts: Nurses submit reports to doctor or head nurse as to patient care provided which would consist of vitals of patients and med's administered to patients during shift. |
| 12. Payment by the Hour, Week or Month:<br>An **Employee** is typically paid by the employer in regular amounts at stated intervals, such as by the hour or week.<br>An **Independent Contractor** is normally paid by the job either a negotiated flat rate or upon submission of a bid. | We agree to pay the workers for the work performed. It's not in the contract. Once work is completed, we verbally agree to pay them for their work generally within the following hourly rate ranges (depending on the facility):<br>RNs- $32.00-$38.00.<br>LVNs- $22.00-$28.00. | | Bates No. 0694<br>The checks the nurses are receiving are from Health Force and Health Force bank accounts.<br><br>[Comments: MZ does not understand the money source issues and how the facilities pay Health Force for the nurses' services.]<br><br>Bates No. 0685 | Facts: Nurses are paid by the hour and must submit to Health Force time cards initialed by charge nurse at facilities. Health Force pays the nurse the next day or the next week depending on what the nurse wants to get paid. Deductions are applied if nurse wants deductions taken out of the pay. Health Force bills the |

084891/000006
140 - 958691v1

| | | | | |
|---|---|---|---|---|
| 12. Payments:<br>Employees are paid by the hour, week or month. Nurses are paid through Health Force. | CNAs- $10.00-$12.00. These rates are determined through negotiations between the facilities and the nurse contractors based on their experience, specialty areas, etc. Both are our clients. Through this process, we negotiate a Bill Rate with the facility clients. The nurses can negotiate the rate directly with the facility if they choose, at whatever rate they choose. The facility client pays us directly for the Bill Rate and we in turn pay the negotiated contractor rate to the contracted nurse.<br>The nurses are paid when they choose and when they bring in their service record. Normal practice is to turn in the completed and signed service records to verify the shift was completed. There is no time or date. Some hold them for weeks and some turn them in immediately. No taxes are withheld from the nurses' pay unless they request it. All income is reported on IRS 1099 forms annually. No deductions are taken from the nurses' pay. The workers are not eligible for bonuses, fringe benefits (e.g. sick, vacation, holiday or severance pay, insurance) or pay advances. They are not eligible for 401(k), PTO, vision, dental, Aflac. | | Nurses are not given a choice if they want to be employees or not. They are also given the choice of whether they want taxes to be deducted.<br><br>Bates No. 0692<br>Health Force is paying the nurses who are not getting paid directly from the facilities.<br><br>Bates No. 0694<br>Checks that the nurses are receiving are from Health Force and are not from a facility like Detar or Citizens. | facilities for those nurses referred to the facilities. |
| 13. Payment of Business & Travel Expenses:<br>An **Employee**'s business and travel expenses are either paid directly or reimbursed by the employer.<br>**Independent** | Tochril does not reimburse the nurses for any business or travel-related expenses. The nurses can and some do carry malpractice insurance at their expense. Tochril carries | | Bates No. 0695<br>While the meals and gas to travel to the facility is not reimbursed by Health Force and the nurses buy their own uniforms (scrubs), this is no different from expenses incurred by an employee. Take | Facts: Health Force pays for Worker Comp Insurance and the Nurses liability insurance. Nurses do not pay for their own liability insurance or insurance if they get hurt on the job. |

084891/000006<br>140 - 958691v1

| | | | myself, I go to work, I pay for my own gas to get there. I pay for my own meal, and I also pay for my own business attire. Due to the nature of the nurses' work, they wear the scrubs and pay for their own meals as anyone else that's employed working outside of the home. | |
|---|---|---|---|---|

<table>
<tr>
<td><strong>Contractors</strong> normally pay all of their own business and travel expenses without reimbursement.<br><br><u>13. Expenses:</u> An employee's business and travel expenses are paid by an employer. This shows that the employee is subject to regulation and control.</td>
<td>professional malpractice insurance for the for the company and its employees, but not for the staff relief nurse workers. The nurses claim business related expenses as income tax deductions and declare themselves as self-employed nurses on their federal income tax returns.</td>
<td></td>
<td>myself, I go to work, I pay for my own gas to get there. I pay for my own meal, and I also pay for my own business attire. Due to the nature of the nurses' work, they wear the scrubs and pay for their own meals as anyone else that's employed working outside of the home.<br><br>Bates No. 0696<br>MZ recognizes an independent contractor deducts the above types of business expenses on their income tax (Schedule C) and receives a 1099 and that this is inconsistent with employee behavior.<br><br>Bates No. 0685<br>Health Force is providing workmen's comp insurance and liability insurance.<br><br>Bates No. 0695<br>Meals and the gas to travel to the facility are reimbursed by Health Force. Nurses buy their own uniforms and scrubs. This is no different from expenses incurred by an employee.<br><br>Bates No. 0696<br>Well, when you are getting a 1099 and you file a Schedule C, then, yes, you're going to deduct certain different expenses.<br><br>Bates No. 0697<br>Zerda advised them of different procedures and benefits of being an employee versus being a contract laborer. Both nurses stated they would prefer to be employees. Although, Zerda is not going to tell them they have to amend their 1040.</td>
<td></td>
</tr>
<tr>
<td><u>14. Furnishing Tools &amp; Equipment:</u><br><strong>Employees</strong> are furnished all necessary tools, materials and equipment by their employer.<br>An <strong>Independent Contractor</strong> ordinarily provides all of the tools and equipment necessary to complete the job.<br><br>14. Tools and Materials:</td>
<td>Tools and equipment that are important to the work include; stethoscope, uniforms, medical bags, tablets, scissors, shoes, tape measures, pill crushers, blood pressure cuffs, and other things of that nature, personal vehicle, nursing equipment, anything else needed to do their job and provide</td>
<td>Our company does not furnish any tools, equipment and materials to the contracted nurse workers for doing the work. The doctors, the hospitals, and the nursing homes furnish anything patient specific for the duration of their work stay, but the nurses do bring in much of their own equipment.</td>
<td>Bates No. 0698<br>While the nurses have their own stethoscopes, scissors, maybe blood pressure cuff, if they don't take them to the facility, the facility can provide those to them. They initially purchase equipment in order to complete their training and schooling (e.g. stethoscope, blood pressure, etc.). They get old and they don't need to buy them again if they are</td>
<td>Facts: Nurses provide their own stethoscope, scrubs, shoes, gloves, scissors, and blood pressure cuffs, however the facilities prefer nurses to use their (facility) equipment for accuracy. Health Force clients provide the major tools and equipment for doing the work. The clients provide the EKG</td>
</tr>
</table>

Page 23

| | | | | |
|---|---|---|---|---|
| An employee is furnished significant tools, materials, and other equipment by an employer. | care for patients. Tochril does not provide any of these things. The nurses have their own equipment, but, there is some equipment needed for the patients that would be held at the facility, such as IVs, hospital bed, wheelchair, CAT scan, some facilities have EKG machines, bed linens, gloves. Some nurses bring Pulse-ox machines. Some nurses have them, some don't. | | furnished. So, at least some would prefer to use equipment at the facilities because they are updated and working correctly.<br><br>Bates No. 0700<br>The nurses do not carry MRI machines or X-ray or cardiovascular machines and like equipment with them to the hospital. All the expensive machinery investments are furnished at the hospital.<br><br>Bates No. 0699<br>Zerda knows from going to different stores that you can buy scrubs anywhere and doesn't understand why nurses would want scrubs that say Detar Hospital if they're not employees of Detar Hospital. | machines, pulse oximeters, beds, linen, gloves, wheel chairs, Cat Scan machines, equipped emergency rooms and equipped operating rooms. |
| 15. Significant Investment:<br>An **Employee** generally has little or no investment in the business. Instead, an **Employee** is economically dependent on the employer. True **Independent Contractor**s usually have a substantial financial investment in their independent business.<br><br>15. Investment: An independent contractor has a significant investment in the facilities he/she uses in performing services for someone else. | The nurses have financial investment in their own business related to Providing nursing services. Some examples are; tools, their equipment, their cars, travel, gas, housing when they travel, expenses relating to professional license, continuing education, license renewal fees, cost of CPR courses, tuberculosis screening. | | Bates No. 0702<br>They do not advertise. They do not invest in advertising in newspaper ads, TV ads, which are quite expensive. They do not offer their services to the public. They do not have the expensive equipment furnished by the facilities.<br><br>Bates No. 0702<br>MZ recognizes the Texas Nurse Practices Act precludes nurses from advertising nursing services to the general public. | Facts: Nurses do not have a substantial investment in facilities or equipment. They have a relatively small investment in stethoscope, scrubs, shoes, gloves, scissors, and blood pressure cuffs. By contrast facilities have substantial investment in equipment such as EKG machines, pulse oximeters, beds, linen, gloves, wheel chairs, Cat Scan machines, equipped emergency rooms and equipped operating rooms. |
| 16. Realize Profit or Loss:<br>An **Employee** does not ordinarily realize a profit or loss in the business. Rather, **Employee**s are paid for services rendered. An **Independent Contractor** can either realize a profit or suffer a loss depending on the management of expenses and revenues.<br><br>16. Profit or Loss: An independent contractor can make a profit or suffer a loss. | The nurses make a profit or suffer a loss doing the work that they do. For example, the expense of traveling to a facility that could be far away, the gas involved. If they have a 12-hour shift, and they are sent home after two hours, that could be a great loss, i.e. expecting to work and it does not occur for some reason (e.g. personal issues requiring them to leave early). | | Bates No. 0703<br>The nurses do not invest in expensive equipment. If the only loss is they do not take an assignment, there is no profit there. They're just working to make extra money to make ends meet and support their families.<br><br>Bates No. 0706<br>These nurses do not have staff under them. They do not have revenues coming in to offset their expenses. Thus, the expense (e.g. gas expense incurred when an assignment is cancelled or cut short) would not be classified as a profit and | Facts: No profit or loss is suffered by the nurses in doing the work and no substantial investment in the business is made by the nurses. Nurses are paid a predetermined amount, which is dictated by Health Force's client. The nurses do not make a significant financial investment in equipment used by him/her in rendering his/her services. All essential equipment is provided by the facilities. |

Page 24

084891/000006
140 - 958691v1

| | | | | |
|---|---|---|---|---|
| | | | loss.<br><br>Bates No. 0706<br>MZ recognizes a nurse can deduct an expense (e.g. apt rent loss when an assignment cancels) on his Schedule C, but she does not consider it a loss because the nurse would have the tax deduction on Schedule C to offset the tax.<br><br>Bates No. 0707<br>[MZ Quote - "I don't know what the Schedule C is based on all the expenses he's going to put on there, whether there's going to be a loss or a gain as far as what he's going to gain on the benefits of saving the tax."] | |
| 17. Working For More Than One Firm At A Time:<br>An **Employee** ordinarily works for one employer at a time and may be prohibited from joining a competitor.<br>An **Independent Contractor** often works for more than one client or firm at the same time and is not subject to a non-competition rule.<br><br>17. Works For More Than One Person or Firm: An independent contractor gives his/her services to two or more unrelated persons or firms at the same time. | An independent contracting nurse can work for more than one hospital, different employers, different agencies Simultaneously, in sequence, or not work at all. The relationship between Tochril and a contracting nurse is not permanent or exclusive. The nurses work through multiple agencies and at more than one facility, or with an employer, performing similar services. | | Bates No. 0711-3<br>From my interviews with the nurses, they had full-time jobs, and were working to earn extra money. This places restrictions on the hours they can work for Health Force. The 90 day "non-compete" clause of the staffing agreement (2.06) also restricts the nurses from working for more than one facility.<br><br>[Comments: Nurse contractors are not parties to the staffing agreement and therefore not bound to any restrictions on work or employment at facilities]<br><br>Bates No. 0713<br>The non-compete clause says that a facility cannot hire a nurse to work for them unless it's been 90 days. Health Force is excluding nurses from working at the facility or becoming their employee and is penalizing the facility if the nurses are hired on at the facility.<br><br>Bates No. 0715<br>Because Health Force is saying by having that restriction in there, they are saying that if the facility is going to hire them, then they are taking a qualified person that they could use elsewhere to work at the facility. Therefore, Health | Facts: Nurses make their services available to Health Force, but can also be on the list for referrals with other firms offering same type of service. However, nurses cannot advertise their services. |

Page 25

| | | | | |
|---|---|---|---|---|
| | | | Force would not be making a profit off of them.<br><br>Bates No. 0716<br>If you consider them to be contract employees or contract labor, what gives you the right to limit them to where they're going to work full-time and put that clause into the contract? | |
| 18. Making Service Available to the Public: An **Employee** does not make his or her services available to the public except through the employer's company. An **Independent Contractor** may advertise, carry business cards, hand out a shingle or hold a separate business license.<br><br>18. Offer Services to General Public: An independent contractor makes his/her services available to the general public. | They seek our services and hire us. It could be by working in facilities or for other agencies. They come in and seek our services. I'm not sure how they find out about us. It is mostly by word of mouth. They come to us, we verify credentials, we verify that they are a licensed professional. Once that happens, they tell us where they want to work. They tell us if they want to work. The nurses can carry business cards if they choose. The nurses can represent themselves to the public or to others as being in business to provide nursing services, but not sure if they do. They do work at multiple agencies. They have the option to tell people about their services to get more work for their personal business. I don't know whether they do any advertising in the newspapers or the Yellow Pages.<br><br>There are even occasions where we have been offering opportunities to these nurses by telephone or email and, for extended periods of time, we wouldn't know if you ran into them on the street. They are free and independent workers. | | Bates No. 0688<br>Health Force contacts the nurses to see if they want to work. The nurses do not advertise their services. They rely on getting calls from Health Force, which is advertising for the nurses (see Factor 3 integration).<br><br>Bates No. 0702<br>Nurses do not advertise because they offer their services to the public. | Facts: The Nurses do not offer their services to the general public. They can work at a health facility by referral or by being an employee of that facility. |

Page 26

084891/000006
140 - 958691v1

528

| | | | | |
|---|---|---|---|---|
| 19. Right to Discharge Without Liability: An **Employee** can be discharged at any time without liability on the employer's part. If the work meets the contract terms, an **Independent Contractor** cannot be fired without liability for breach of contract.<br><br>19. Right to Fire: An employee can be fired by an employer. An independent contractor cannot be fired so long as he or she produces a result that meets the specifications of the contract. | We don't discharge, so the nurses are aware there is no relationship whereby we can discharge them; they come and go and work as they please. | | Bates No. 0707-8 Section 2.02 of the facility supplemental staffing agreement between the facility and Health Force states that the facility can dismiss if they're unhappy with the work that they're doing. For whatever reason, they can dismiss them. That's a right to fire. It is an agreement between Health Force and the facility whereby Health Force is delegating the right to discharge control over to the facility.<br><br>Bates No. 0710 Health Force can also evaluate the nurses and send a report. 2.05 says the nurses periodically report to Health Force. If it is a negative evaluation, then they will not be sent to that facility or be assigned another assignment.<br><br>Bates No. 0710 MZ says the nurses she interviewed were not aware of any such evaluations and she is not aware 2.05 has ever been implemented.<br><br>[Comments: the nurse contractors are not parties to the staffing agreement and are not bound by them.]<br><br>Bates No. 0693 If Health Force is going to hire a nurse, and they're going to have the flexibility of the hours that they work then that flexibility is given to the nurse to choose what hours they're going to work.<br><br>Bates No. 0707 Right to fire. If you go back to your facility supplemental staffing agreement between the facility and Health Force. The facility can dismiss which is the right to fire.<br><br>Bates No. 0709 "And the dismissal of staffing personnel will not be assigned to the facility thereafter." That | Facts: Health Force has the right to discharge a worker. The right to discharge is a factor of control or direction through the ever-present threat of dismissal. Health Force gives their clients through contract the right to dismiss a nurse and request another to replace the nurse for the shift. |

Page 27

084891/000006
140 - 958691v1

| | | | | is firing. They do not want them to return. But it's an agreement between Health Force and the facility delegating Health Force is delegating that control over the facility with this agreement. | |
|---|---|---|---|---|---|
| 20. Right To Quit Without Liability: An **Employee** may quit work at any time without liability on the **Employee**'s part. An **Independent Contractor** is legally responsible for job completion and, on quitting, becomes liable for breach of contract. 20. Right To Quit: An employee can quit his/her job at any time without incurring liability. An independent contractor usually agrees to complete a specific job and is responsible for its satisfactory completion, or is legally obligated to make good for failure to complete it. | If the worker accepts a shift offered by the hospital or facility, they are expected to work it, but many times, that cannot or does not happen. They have the right to accept a shift and cancel it. If the nurse cancels, the nurse worker does not get paid for the shift, but there are no disciplinary repercussions. If a nurse quits in the middle of the job, we cannot sue and hold that nurse financially liable. But, as a licensed individual, they can get in big trouble by the state if they abandon patients. They necessarily wouldn't quit since they were not hired in the first place, but they can stop all communication at any time, or not even show up. | | | Bates No. 0710-1 The nurses have the right to quit and can take their name off the list by contact Health Force and say they no longer want to work additional shifts or they no longer want to work, to earn extra money. | Facts: Nurses can terminate or quit the work without incurring a liability by refusing to work the shifts assigned or requesting to be removed from the list. Also, the contract between Health Force and its clients the client is prohibited from hiring the nurses referred to the clients by Health Force within a 90 day period after the last referral. |

**D. The TWC Cannot Rely on the Temporary Help Firm Statute**

**1. The Temporary Help Firm Statute Does Not Presume Employee Status**

Section 201.029 of the Texas Labor Code states:

TEMPORARY HELP FIRM. For purposes of this subtitle, a temporary help firm is the employer of an individual employed by the firm as a temporary employee.

(the "THF Statute"). Sections 201.011(20) and 201.011(21) of the Texas Labor Code defines

"temporary employee" and "temporary help firm" as follows:

(20) "Temporary employee" means an individual employed by a temporary help firm for the purpose of being assigned to work for the clients of a temporary help firm.

Page 28

084891/000006
140 - 958691v1

530

# 20 FACTOR CHART
## Deposition Testimony of Worker Witnesses
### Sabala, Sifuentes, Chapman, Strahan, and Rojas

| Factor 40 TAC Section 815.134 | Patricia Sabala Exhibit C | Salvador Sifuentes Exhibit D | Erika Chapman Exhibit E | Kay Strahan Exhibit F | Rosa Rojas Exhibit G |
|---|---|---|---|---|---|
| 1. Instructions: An **Employee** receives instructions about when, where and how the work is performed. An **Independent Contractor** does the job his or her own way with few, if any, instructions as to the details or methods of the work.<br><br>1. Instructions: An employee must comply with instructions about when, where, and how to work. Even if no instructions are given, the control factor is present if the employer has the right to give instructions. | Licensed Vocational Nurses ("LVNs") are not committed to accepting assignments from Health Force.[1]<br><br>Instructions regarding services performed come from the hospital directly.[2]<br><br>LVNs can say "yes" or "no" to a shift offered by Health Force.[3] | Health Force does not require a specific schedule.[4]<br><br>Health Force does not set the hours worked.[5]<br><br>Health Force does not supervise the work at the hospitals or facilities.[6] | She can work for other placement companies (like Health Force) wherever she wants.[7]<br><br>She can apply at hospitals not associated with Health Force.[8]<br><br>Health Force does not supervise the LVNs or Registered Nurses ("RNs") work at facilities or hospitals.[9] | **LVNs are subcontractors. They work when they want, if they want, and where they want.**[10] | Doctors determine the services performed by the LVNs or RNs and direct their work.[11]<br><br>Health Force does not have doctors on staff.[12] |

---

[1] Patricia Sabala Testimony, Tr. pp.43-44, 45.

[2] Patricia Sabala Testimony, Tr. pp.48.

[3] Patricia Sabala Testimony, Tr. pp.61-62.

[4] Salvador Sifuentes Testimony, Tr. p. 79.

[5] Salvador Sifuentes Testimony, Tr. p. 79.

[6] Salvador Sifuentes Testimony, Tr. p. 80.

[7] Erika Chapman Testimony, Tr. pp. 53-54.

[8] Erika Chapman Testimony, Tr. p. 54.

[9] Erika Chapman Testimony, Tr. pp. 57-58.

[10] Kay Strahan Testimony, Tr. p. 69.

[11] Rosa Rojas Testimony, Tr. p. 74.

[12] Rosa Rojas Testimony, Tr. p. 74.

| Factor 40 TAC Section 815.134 | Patricia Sabala Exhibit A | Salvador Sifuentes Exhibit B | Erika Chapman Exhibit C | Kay Strahan Exhibit D | Rosa Rojas Exhibit E |
|---|---|---|---|---|---|
| 2. Training:<br><br>**Employees** are often trained by a more experienced **Employee** or are required to attend meetings or take training courses.<br><br>**An Independent Contractor** uses his or her own methods and thus need not receive training from the purchaser of those services.<br><br>2. Training: An employee is trained to perform services in a particular manner, independent contractors ordinarily use their own methods and receive no training from the purchasers of their services. | Health Force does not provide training.[13] | Health Force has not given any training to RNs. | Never took any training or classes at Health Force.[14] | Doesn't recall any training provided by Health Force.[15] | Health Force would provide an orientation on some facilities. No other training provided.[16] |
| 3. Integration: Services of an **Employee** are usually merged into the firm's overall operation; the firm's success depends on those **Employee** services. An **Independent Contractor's** services are usually separate from the client's | Never performed any LVN services or other work at Health Force's office.[17] | Never provided services at Health Force's company office.[18] | Never performed services at Health Force's office.[19] | Did not spend much time at the Health Force office. Mainly, would stop by to drop off time sheets or pick up a check.[20] | |

---

[13] Patricia Sabala Testimony, Tr. p. 58.

[14] Erika Chapman Testimony, Tr. pp. 39-40.

[15] Kay Strahan Testimony, Tr. p. 97.

[16] Rosa Rojas Testimony, Tr. pp. 50-51.

[17] Patricia Sabala Testimony, Tr. p. 53.

[18] Salvador Sifuentes Testimony, Tr. p. 81.

[19] Erika Chapman Testimony, Tr. p. 59.

[20] Kay Strahan Testimony, Tr. pp. 63-65.

084891/000006
375 - 1704437v1

**EXHIBIT B** 1252

| Factor 40 TAC Section 815.134 | Patricia Sabala Exhibit A | Salvador Sifuentes Exhibit B | Erika Chapman Exhibit C | Kay Strahan Exhibit D | Rosa Rojas Exhibit E |
|---|---|---|---|---|---|
| business and are not integrated or merged into it.<br><br>3. Integration: An employee's services are integrated into the business operations because the services are important to the success or continuation of the business. This shows that the employee is subject to direction and control. Integration of worker's services in the business operation of Health Force generally indicated that the worker is subject to control or direction. The corporation Health Force is principally engaged in a nurse placement business. | | | | | |
| 4. Services Rendered Personally: An **Employee's** services must be rendered personally; **Employees** do not hire their own substitutes or delegate work to them. A true **Independent Contractor** is able to assign another to do the job in his or her place and need not perform services personally.<br><br>4. Services Rendered | | Could have a coworker take over his shift, if needed.[21] | | | |

---

[21] Salvador Sifuentes Testimony, Tr. pp. 46-47. In addition, Health Force's CEO Holly Alonzo testified at the Rule 13 hearing:

Q. You said that some do have helpers or assistants?
A. They can.
Q. Well, do you know if they have them?
A. Yes.
Q. And how are you aware of that fact?
A. The nurses tell us.

February 19, 2009 Holly Alonzo Rule 13 Hearing Testimony, Tr. p. 41, attached as Exhibit F; 2013 Response p. 18.

| Factor 40 TAC Section 815.134 | Patricia Sabala Exhibit A | Salvador Sifuentes Exhibit B | Erika Chapman Exhibit C | Kay Strahan Exhibit D | Rosa Rojas Exhibit E |
|---|---|---|---|---|---|
| **Personally:** An employee renders services personally. This shows that the employer is interested in the methods as well as the results. | | | | | |
| **5. Hiring, Supervising & Paying Helpers:** An **Employee** may act as a foreman for the employer but, if so, helpers are paid with the employer's funds. **Independent Contractors** select, hire, pay and supervise any helpers used and are responsible for the results of the helpers' labor.  **5. Hiring Assistants:** An employee works for an employer who hires, supervises, and pays assistants. An independent contractor hires, supervises, and pays assistants under a contract that requires him/her to provide materials and labor and to be responsible only for the results. Nurses cannot hire assistants to do patient care for them. | | Could have a coworker take over his shift, if needed.[22] | | | |

---

[22] Salvador Sifuentes Testimony, Tr. pp. 46-47.  In addition, Health Force's CEO Holly Alonzo testified at the Rue 13 hearing:

Q. You said that some do have helpers or assistants?
A. They can.
Q. Well, do you know if they have them?
A. Yes.
Q. And how are you aware of that fact?
A. The nurses tell us.

February 19, 2009 Holly Alonzo Rule 13 Hearing Testimony, Tr. p 41; 2013 Response p. 18.

084891/000006
375 - 1704437v1

**EXHIBIT B**

| Factor 40 TAC Section 815.134 | Patricia Sabala Exhibit A | Salvador Sifuentes Exhibit B | Erika Chapman Exhibit C | Kay Strahan Exhibit D | Rosa Rojas Exhibit E |
|---|---|---|---|---|---|
| 6. Continuing Relationship: An **Employee** often continues to work for the same employer month after month or year after year. An **Independent Contractor** is usually hired to do one job of limited or indefinite duration and has no expectation of continuing work.<br><br>6. Continuing Relationship: An employee has a continuing relationship with an employer. A continuing relationship many exist where work is performed at frequently recurring although irregular intervals. | While providing services for Health Force, she worked for other companies. [23]<br><br>Not committed to accepting assignments from Health Force. [24]<br><br>Could refuse patient assignments. [25]<br><br>Could say "yes" or "no" to a shift offered by Health Force. [26] | Able to work at other hospitals other than the ones Health Force offered assignments at. [27]<br><br>Has worked at places other than those assignments offered by Health Force. [28] | LVNs and RNs can work for other companies if they want. [29]<br><br>LVNs and RNs can apply for positions at hospitals not associated with Health Force. [30] | Could have worked for other placement companies or hospitals. [31]<br><br>Declined employment opportunities at hospitals because he would lose the independence he had at Health Force. [32] | Can refuse an assignment from Health Force. [33]<br><br>Can work for other hospitals that do not have a contract with Health Force. [34] |
| 7. Set Hours of Work: An **Employee** may work "on call" or during hours and days as set by the employer. | | Health Force does not require a specific schedule. [35]<br><br>Health Force does not set the hours worked. [36] | Shifts are determined by the facility, not Health Force; Health Force does not set the LVNs or RNs hours worked in a day. [37] | "[I] provide my own schedule. They [Health Force] do not provide a schedule for me." [38] | Hours for a shift are predetermined by the hospital. [39]<br><br>Can refuse an assignment. [40] |

[23] Patricia Sabala Testimony, Tr. p. 50.

[24] Patricia Sabala Testimony, Tr. pp. 43-45.

[25] Patricia Sabala Testimony, Tr. p. 61.

[26] Patricia Sabala Testimony, Tr. p. 62.

[27] Salvador Sifuentes Testimony, Tr. p. 77.

[28] Salvador Sifuentes Testimony, Tr. p. 77.

[29] Erika Chapman Testimony, Tr. p. 53.

[30] Erika Chapman Testimony, Tr. p. 54.

[31] Kay Strahan Testimony, Tr. pp. 77-78.

[32] Kay Strahan Testimony, Tr. pp. 77-78.

[33] Rosa Rojas Testimony, Tr. pp. 37-38.

[34] Rosa Rojas Testimony, Tr. pp. 63-64.

[35] Salvador Sifuentes Testimony, Tr. p. 79.

[36] Salvador Sifuentes Testimony, Tr. p. 79.

084891/000006
375 - 1704437v1

**EXHIBIT B**

| Factor 40 TAC Section 815.134 | Patricia Sabala Exhibit A | Salvador Sifuentes Exhibit B | Erika Chapman Exhibit C | Kay Strahan Exhibit D | Rosa Rojas Exhibit E |
|---|---|---|---|---|---|
| A true **Independent Contractor** is the master of his or her own time and works the days and hours he or she chooses.<br><br>7. Set Hours of Work: An employee has set hours or work established by an employer. An independent contractor is the master of his or her own time. | | | | | LVNs and RNs are in control of their own schedule.[41] |
| 8. Full Time Required: An **Employee** ordinarily devotes full-time service to the employer, or the employer may have a priority on the employee's time. A true **Independent Contractor** cannot be required to devote full-time service to one firm exclusively. | While providing services for Health Force, she worked for other companies. [42]<br><br>Not committed to accepting assignments from Health Force.[43]<br><br>Could say "yes" or "no" to a shift offered by Health Force.[44] | Able to work at other hospitals other than the ones Health Force offered assignments at.[45]<br><br>Has worked at places other than those assignments offered by Health Force.[46] | Can work for other placement companies (like Health Force) wherever she wants.[47]<br><br>Can apply at hospitals not associated with Health Force.[48] | LVNs are subcontractors. They work when they want, if they want, and where they want.[49]<br><br>Could have worked for other placement companies or hospitals.[50] | Can refuse an assignment from Health Force.[51] |

---

[37] Erika Chapman Testimony, Tr. pp. 55-57.

[38] Kay Strahan Testimony, Tr. pp. 38, 43-44.

[39] Rosa Rojas Testimony, Tr. pp. 37-38.

[40] Rosa Rojas Testimony, Tr. pp. 37-38.

[41] Rosa Rojas Testimony, Tr. pp. 64-65.

[42] Patricia Sabala Testimony, Tr. p. 50.

[43] Patricia Sabala Testimony, Tr. pp. 43-45.

[44] Patricia Sabala Testimony, Tr. p. 62.

[45] Salvador Sifuentes Testimony, Tr. p. 77.

[46] Salvador Sifuentes Testimony, Tr. p. 77.

[47] Erika Chapman Testimony, Tr. pp. 53-54.

[48] Erika Chapman Testimony, Tr. p. 54.

[49] Kay Strahan Testimony, Tr. p. 69.

[50] Kay Strahan Testimony, Tr. pp. 77-78.

[51] Rosa Rojas Testimony, Tr. pp. 37-38.

| Factor 40 TAC Section 815.134 | Patricia Sabala Exhibit A | Salvador Sifuentes Exhibit B | Erika Chapman Exhibit C | Kay Strahan Exhibit D | Rosa Rojas Exhibit E |
|---|---|---|---|---|---|
| 8. Full Time Work: An employee normally works full time for an employer. An independent contractor can work when and for whom he or she chooses. Nurses are worker 30, 40, and even 60 hours a week this constitutes full time. | | | | | |
| 9. Location where services performed. **Employment** is indicated if the employer has the right to mandate where services are performed. **Independent Contractors** ordinarily work where they choose. The workplace may be away from the client's premises.<br><br>9. Work Done on Premises: An employee works on the premises of an employer, or works on a route or at a location designated by an employer. | Could say "yes" or "no" to a shift offered by Health Force.[52]<br><br>Never performed any LVN services or other work at Health Force's office.[53] | Has worked at places other than those assignments offered by Health Force.[54]<br><br>Never provided services at Health Force's company office.[55] | Health Force would contact LVNs or RNs about different assignments.[56] Could refuse a shift or assignment.[57]<br><br>Never performed services at Health Force's office.[58] | LVNs are subcontractors. They work when they want, if they want, and where they want.[59] | Can tell Health Force Where she is going to work.[60]<br><br>Can refuse an assignment from Health Force.[61]<br><br>Can work for other hospitals that do not have a contract with Health Force.[62] |

---

[52] Patricia Sabala Testimony, Tr. p. 62.

[53] Patricia Sabala Testimony, Tr. p. 53.

[54] Salvador Sifuentes Testimony, Tr. p. 77.

[55] Salvador Sifuentes Testimony, Tr. p. 81.

[56] Erika Chapman Testimony, Tr. p. 19.

[57] Erika Chapman Testimony, Tr. pp. 29-30.

[58] Erika Chapman Testimony, Tr. p. 59.

[59] Kay Strahan Testimony, Tr. p. 69.

[60] Rosa Rojas Testimony, Tr. pp. 66.

[61] Rosa Rojas Testimony, Tr. pp. 37-38.

[62] Rosa Rojas Testimony, Tr. pp. 63-64.

| Factor 40 TAC Section 815.134 | Patricia Sabala Exhibit A | Salvador Sifuentes Exhibit B | Erika Chapman Exhibit C | Kay Strahan Exhibit D | Rosa Rojas Exhibit E |
|---|---|---|---|---|---|
| 10. Order or Sequence Set: An **Employee** performs services in the order or sequence set by the employer. This shows control by the employer. A true **Independent Contractor** is concerned only with the finished product and sets his or her own order or sequence of work. | Instructions regarding a LVN's work come from the hospital and its doctors, not Health Force.[63] | Health Force does not supervise a RNs' work.[64] | Health Force does not supervise the LVNs or RNs at the facilities.[65] | Health Force does not direct LVNs how to do their job.[66] | Doctors at the facilities/hospitals had the final say on how patients are treated.[67] |
| 10. Order or Sequence Set: Employee must perform services in the order or sequence set by an employer. This shows that the employee is subject to direction and control. Nurses are not permitted to follow his/her own pattern of work but rather must follow the established routines/schedules of the facilities. | | | | | |
| 11. Oral or Written Reports: An **Employee** may be required to submit regular oral or written reports about the work in progress. An **Independent Contractor** is usually | No requirement that a weekly or monthly report was turned into Health Force.[68]<br><br>Only time sheets were turned in.[69] | Only required to report time and licensing to Health Force.[70] | Other than time sheets, not required to submit any reports to Health Force.[71] | | Reports regarding patient status updates were provided to hospital staff and doctors, not Health Force.[72] |

---

[63] Patricia Sabala Testimony, Tr. pp. 48, 59.

[64] Salvador Sifuentes Testimony, Tr. p. 80.

[65] Erika Chapman Testimony, Tr. pp. 57-58.

[66] Kay Strahan Testimony, Tr. pp. 131-132.

[67] Rosa Rojas Testimony, Tr. p. 54.

[68] Patricia Sabala Testimony, Tr. p. 58.

[69] Patricia Sabala Testimony, Tr. pp. 57-58.

[70] Salvador Sifuentes Testimony, Tr. p. 60.

[71] Erika Chapman Testimony, Tr. pp. 40-41.

[72] Rosa Rojas Testimony, Tr. pp. 54-55.

| Factor 40 TAC Section 815.134 | Patricia Sabala Exhibit A | Salvador Sifuentes Exhibit B | Erika Chapman Exhibit C | Kay Strahan Exhibit D | Rosa Rojas Exhibit E |
|---|---|---|---|---|---|
| not required to submit regular oral or written reports about the work in progress.<br><br>11. Reports: Employee submits reports to an employer. This shows that the employee must account to the employer for his or her actions. | | | | | |
| 12. Payment by the Hour, Week or Month: An **Employee** is typically paid by the employer in regular amounts at stated intervals, such as by the hour or week. An **Independent Contractor** is normally paid by the job either a negotiated flat rate or upon submission of a bid.<br><br>12. Payments: Employees are paid by the hour, week or month. Nurses are paid through Health Force. | | Hospitals pay Health Force and Health Force pays the RNs. Health Force keeps some of the money paid by hospitals.[73] | Hospitals pay Health Force and Health Force pays the LVNs or RNs, after keeping a fee.[74]<br><br>Rate of pay could be different based on the hospital assignment.[75] | Hospitals pay Tochril and Tochril pays the LVNs after taking out a referral fee.[76] | |
| 13. Payment of Business & Travel Expenses: An **Employee**'s business and travel expenses are either paid directly or reimbursed by the employer. **Independent Contractors** normally pay all of their own | Health Force never provided uniforms, equipment, medication, or other items that were used to work as a LVN.[77] | Registered nurses utilized by Health Force pay for their own expenses.[78]<br><br>He has deducted his expenses on federal tax returns, including such items as uniforms, stethoscopes, cellphone, continuing | Deducted business expenses on federal tax returns.[80]<br><br>Never submitted business expenses for reimbursement form Health Force.[81] | Health Force does not pay for CPR and LVN licenses.[82]<br><br>Provides his own transportation. Not reimbursed for any business expenses by Health Force.[83] | Pays for her own business expenses, including gas and car.[84]<br><br>She has deducted expenses on her federal tax return, including for mileage, uniforms, and cellphone.[85] |

---

[73] Salvador Sifuentes Testimony, Tr. pp. 74-75.

[74] Erika Chapman Testimony, Tr. pp. 67-68.

[75] Erika Chapman Testimony, Tr. p. 71.

[76] Kay Strahan Testimony, Tr. p. 37.

[77] Patricia Sabala Testimony, Tr. p. 54.

[78] Salvador Sifuentes Testimony, Tr. pp. 84-85.

| Factor<br>40 TAC Section<br>815.134 | Patricia Sabala<br>Exhibit A | Salvador Sifuentes<br>Exhibit B | Erika Chapman<br>Exhibit C | Kay Strahan<br>Exhibit D | Rosa Rojas<br>Exhibit E |
|---|---|---|---|---|---|
| business and travel expenses without reimbursement.<br><br>13. Expenses: An employee's business and travel expenses are paid by an employer. This shows that the employee is subject to regulation and control. | | education classes, CPR certification, license fees, and mileage.[79] | | | |
| 14. Furnishing Tools & Equipment: **Employee**s are furnished all necessary tools, materials and equipment by their employer.<br>An **Independent Contractor** ordinarily provides all of the tools and equipment necessary to complete the job.<br><br>14. Tools and Materials: An employee is furnished significant tools, materials, and other equipment by an employer. | Health Force never provided uniforms, equipment, medication, or other items that were used to work as a LVN.[86] | Deducted uniform, cellphone, and stethoscope on federal tax returns. Health Force does not provide these items.[87] | Purchased own equipment, including blood pressure cuff, stethoscope, and fax machine.[88]<br><br>Deducted uniform, stethoscope, and other expenses on her federal tax return.[89] | Provides his own transportation. Not reimbursed for any business expenses by Health Force.[90] | Deducted uniform and cellphone on federal tax return.[91] |

---

[80] Erika Chapman Testimony, Tr. p. 64.

[81] Erika Chapman Testimony, Tr. p. 65.

[82] Kay Strahan Testimony, Tr. p. 97.

[83] Kay Strahan Testimony, Tr. p. 54.

[84] Rosa Rojas Testimony, Tr. p. 47.

[85] Rosa Rojas Testimony, Tr. p. 72.

[79] Salvador Sifuentes Testimony, Tr. pp. 87-88.

[86] Patricia Sabala Testimony, Tr. p. 54.

[87] Salvador Sifuentes Testimony, Tr. pp. 87-88.

[88] Erika Chapman Testimony, Tr. pp. 38-39.

[89] Erika Chapman Testimony, Tr. pp. 64.

[90] Kay Strahan Testimony, Tr. p. 54.

[91] Rosa Rojas Testimony, Tr. p. 72.

| Factor 40 TAC Section 815.134 | Patricia Sabala Exhibit A | Salvador Sifuentes Exhibit B | Erika Chapman Exhibit C | Kay Strahan Exhibit D | Rosa Rojas Exhibit E |
|---|---|---|---|---|---|
| 15. Significant Investment: An **Employee** generally has little or no investment in the business. Instead, an **Employee** is economically dependent on the employer. True **Independent Contractor**s usually have a substantial financial investment in their independent business. 15. Investment: An independent contractor has a significant investment in the facilities he/she uses in performing services for someone else. | Purchased uniforms, equipment (a stethoscope), and other items that were used to work as a LVN.[92] She paid for licenses LVNs are required to have.[93] | Purchased a stethoscope and cellphone for work as a registered nurse.[94] Provides his own transportation.[95] He has deducted his expenses on federal tax returns, including such items as uniforms, stethoscopes, cellphone, continuing education classes, CPR certification, license fees, and mileage.[96] | Purchased equipment, including blood pressure cuff, stethoscope, and fax machine.[97] | Invests in business by buying uniforms, cellphone, blood pressure cuff, stethoscope, and shoes.[98] Provides own transportation to assignments.[99] | Pays for her own business expenses, including gas and car.[100] She has deducted expenses on her federal tax return, including for mileage, uniforms, and cellphone.[101] |
| 16. Realize Profit or Loss: An **Employee** does not ordinarily realize a profit or loss in the business. Rather, **Employee**s are paid for services rendered. | If her shift was cancelled by a hospital, it could result in a loss for the day.[102] | He would incur a loss for the day if a shift was cancelled.[103] | If her shift was cancelled, she was only paid for 2 hours. She considers this to be a loss for the day.[104] | Could lose money if hospital cancels her shift.[105] | Took a loss and end up paying back taxes.[106] |

[92] Patricia Sabala Testimony, Tr. pp. 39, 54.

[93] Patricia Sabala Testimony, Tr. p. 58.

[94] Salvador Sifuentes Testimony, Tr. p. 56.

[95] Salvador Sifuentes Testimony, Tr. p. 54.

[96] Salvador Sifuentes Testimony, Tr. pp. 87-88.

[97] Erika Chapman Testimony, Tr. pp. 38-39.

[98] Kay Strahan Testimony, Tr. pp. 56-58.

[99] Kay Strahan Testimony, Tr. p. 54.

[100] Rosa Rojas Testimony, Tr. p. 47.

[101] Rosa Rojas Testimony, Tr. p. 72.

[102] Patricia Sabala Testimony, Tr. pp. 53-54.

[103] Salvador Sifuentes Testimony, Tr. p. 81.

[104] Erika Chapman Testimony, Tr. pp. 69-70.

[105] Kay Strahan Testimony, Tr. pp. 94-95.

[106] Rosa Rojas Testimony, Tr. pp. 32-33.

| Factor 40 TAC Section 815.134 | Patricia Sabala Exhibit A | Salvador Sifuentes Exhibit B | Erika Chapman Exhibit C | Kay Strahan Exhibit D | Rosa Rojas Exhibit E |
|---|---|---|---|---|---|
| An **Independent Contractor** can either realize a profit or suffer a loss depending on the management of expenses and revenues.<br><br>16. Profit or Loss: An independent contractor can make a profit or suffer a loss. | | | | | |
| 17. Working For More Than One Firm At A Time: An **Employee** ordinarily works for one employer at a time and may be prohibited from joining a competitor. An **Independent Contractor** often works for more than one client or firm at the same time and is not subject to a non-competition rule.<br><br>17. Works For More Than One Person or Firm: An independent contractor gives his/her services to two or more unrelated persons or firms at the same time. | While providing services for Health Force, she worked for other companies. [107] | Has worked at places other than those assignments offered by Health Force.[108] | Can work for other placement companies (like Health Force) wherever she wants.[109]<br><br>Can apply at hospitals not associated with Health Force.[110]<br><br>Never worked exclusively for Health Force.[111] | LVNs are subcontractors. They work when they want, if they want, and where they want.[112]<br><br>Could have worked for other placement companies or hospitals.[113] | Can work for other hospitals that do not have a contract with Health Force.[114] |

[107] Patricia Sabala Testimony, Tr. p. 50.

[108] Salvador Sifuentes Testimony, Tr. p. 77.

[109] Erika Chapman Testimony, Tr. p. 53-54.

[110] Erika Chapman Testimony, Tr. p. 54.

[111] Erika Chapman Testimony, Tr. p. 67.

[112] Kay Strahan Testimony, Tr. p. 69.

[113] Kay Strahan Testimony, Tr. pp. 77-78.

[114] Rosa Rojas Testimony, Tr. pp. 63-64.

| Factor 40 TAC Section 815.134 | Patricia Sabala Exhibit A | Salvador Sifuentes Exhibit B | Erika Chapman Exhibit C | Kay Strahan Exhibit D | Rosa Rojas Exhibit E |
|---|---|---|---|---|---|
| 18. Making Service Available to the Public: An **Employee** does not make his or her services available to the public except through the employer's company. An **Independent Contractor** may advertise, carry business cards, hand out a shingle or hold a separate business license.<br><br>18. Offer Services to General Public: An independent contractor makes his/her services available to the general public or more unrelated persons or firms at the same time. | | He could spend his own money on advertising, but chooses not to.[115] | Does not spend money on advertising, but that is her decision.[116] | No advertising budget. He will sometimes buy gifts for coworkers as a form of advertising.[117] | |
| 19. Right to Discharge Without Liability:[118] An **Employee** can be discharged at any time without liability on the employer's part. If the work meets the contract terms, an **Independent Contractor** cannot be fired without liability for breach of contract.<br><br>19. Right to Fire: An employee can be fired by an employer. An | | | | | |

---

[115] Salvador Sifuentes Testimony, Tr. p. 85.

[116] Erika Chapman Testimony, Tr. p. 76.

[117] Kay Strahan Testimony, Tr. pp. 40-41.

[118] At the Rule 13 hearing, Health Force's CEO Holly Alonzo testified:

> Q. If you were to discharge a nurse in the middle of the job, could that nurse sue your company and hold you financially liable?
> A. We don't discharge, so, they are aware that there is no relationship; just come and go, work as you please.

February 19, 2009 Holly Alonzo Rule 13 Hearing Testimony, Tr. p. 39, attached as Exhibit F; 2013 Response p. 27.

| Factor 40 TAC Section 815.134 | Patricia Sabala Exhibit A | Salvador Sifuentes Exhibit B | Erika Chapman Exhibit C | Kay Strahan Exhibit D | Rosa Rojas Exhibit E |
|---|---|---|---|---|---|
| independent contractor cannot be fired so long as he or she produces a result that meets the specifications of the contract. | | | | | |
| 20. Right To Quit Without Liability:[119] An **Employee** may quit work at any time without liability on the **Employee**'s part. An **Independent Contractor** is legally responsible for job completion and, on quitting, becomes liable for breach of contract.<br><br>20. Right To Quit: An employee can quit his/her job at any time without incurring liability. An independent contractor usually agrees to complete a specific job and is responsible for its satisfactory completion, or is legally obligated to make good for failure to complete it. | | | | | Once an assignment is accepted, a LVN or RN is expected to perform.[120] |

---

[119] At the Rule 13 hearing, Health Force's CEO Holly Alonzo testified:

> Q. If the worker accepts a shift as offered by the hospital, is that worker expected to work that shift?
> A. They're expected, but, that, at many times, cannot happen, or does not happen. They have the right to accept a shift and cancel it.
> Q. What happens if they do cancel?
> A. They don't get paid, obviously, for the shift, but, there's no repercussions as far as discipline.
>                                         ***
> Q. If a nurse quits in the middle of the job, can your company sue that nurse and hold that nurse financially liable?
> A. No. But, I mean, as a licensed individual, they can get in big trouble; it's abandonment of patients. But, you know, that's through the state.

February 19, 2009 Holly Alonzo Rule 13 Hearing Testimony, Tr. pp. 37-39, attached as Exhibit F; 2013 Response p. 28.

[120] Rosa Rojas Testimony, Tr. p. 38.

084891/000006
375 - 1704437v1

**EXHIBIT B** 1264

| Factor 40 TAC Section 815.134 | Patricia Sabala Exhibit A | Salvador Sifuentes Exhibit B | Erika Chapman Exhibit C | Kay Strahan Exhibit D | Rosa Rojas Exhibit E |
|---|---|---|---|---|---|
| | | | | | |

084891/000006
375 - 1704437v1

**EXHIBIT B** 1265

Filed in The District Court
of Travis County, Texas

AUG 2 6 2015

At ____ //:// ____ M.

Velva L. Price, District Clerk

## CAUSE NO. D-1-GN-09-001957

| | | |
|---|---|---|
| **TOCHRIL, INC.,** | ' | **IN THE DISTRICT COURT** |
| **Plaintiff,** | ' | |
| **v.** | ' | **53rd JUDICIAL DISTRICT** |
| **TEXAS WORKFORCE COMMISSION,** | ' | |
| **Defendants.** | ' | **TRAVIS COUNTY, TEXAS** |

### ORDERS ON THE TEXAS WORKFORCE COMMISSION'S OBJECTIONS TO PLAINTIFF'S SUMMARY JUDGMENT EVIDENCE

After considering the Texas Workforce Commission's (TWC) objections to Plaintiff's summary-judgment evidence, the Court orders as follows:

### I.    OBJECTIONS TO PAGES 13-28 OF PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT.

### A.    Statements attributed to Alonzo and Pappillion do not reference summary judgment evidence.

The TWC object to Plaintiff's attempt to introduce evidence in its response to the TWC motion for summary judgment that is not supported by references to admissible summary judgment evidence. No statement by Alonzo or Pappillion include citations to specific supporting evidence.

A party cannot rely on factual statements contained in its own motion for summary judgment as proof.[1] A party may not use general citations to support a summary judgment

---

[1] *Hidalgo v. Surety S&L Ass'n*, 462 S.W.2d 540, 545 (Tex. 1971).

1





motion.[2] When presenting summary-judgment proof, a party must specifically identify the supporting proof that it wants the court to consider; generally referencing the documents does not relieve the party of pointing out to the court where in the documents the evidence can be found.[3] Courts must not consider summary judgment evidence that is offered without guidance as to where specific support can be found.[4] For summary judgment evidence to be considered, the motion should at least have a substantial number of citations to that evidence.[5]

The Alonzo and Pappillion columns do not include any citations to evidence whatsoever. Because the statements contained in those columns do not contain citations to evidence as required, the TWC objects to and move to strike those columns from Plaintiff's response to the TWC's motion for summary judgment.

ORDER:

Sustained __✓__           Overruled_____

## B.    Alonzo and Pappillion have not provided proper witness statements.

The TWC objects to the Alonzo and Pappillion columns on the grounds that the statements contained therein do not qualify as an affidavit or an unsworn declaration and thus are incompetent summary-judgment evidence. The statements attributed to Alonzo

---

[2] *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 81 (Tex. 1989).

[3] *Arredondo v. Rodriguez*, 198 S.W.3d 236, 238–39 (Tex. App.—San Antonio 2006, no pet.).

[4] *Guthrie v. Suiter*, 934 S.W.2d 820, 826 (Tex. App.—Houston [1st Dist.] 1996, no pet.).

[5] *Barraza v. Eureka Co.*, 25 S.W.3d 225, 229–30 (Tex. App.—El Paso 2000, pet. denied)

2

and Pappillion do not comply with Texas Government Code section 312.011(1), which defines an affidavit as "a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office."[6] The statements also fails as an unsworn declaration because it does not comply with Texas Civil Practice & Remedies Code section 132.001 because none are made under penalty of perjury.

Because the Alonzo and Pappillion columns are a series of unsworn statements, they are not competent summary-judgment proof.[7] Because the statements are not competent summary-judgment proof, the TWC objects to those statements and moves to strike them.

ORDER:

Sustained__✓___        Overruled_____

### C.    Objections to summary of testimony under Tex. R. Evid. 1006

The TWC further objects to Plaintiff's use of summaries instead of specific citations to summary judgment evidence. On page 13, footnote 30, Plaintiff explains that, pursuant to Tex. R. Evid. 1006, it is not providing citations to summary judgment evidence from a hearing on its administrative appeal before the TWC because the transcript is too voluminous. Instead, Plaintiff summarizes Alonzo's and Pappillion's testimony from that hearing and presents that summary in the chart on pages 13-28.

---

[6] *Mansions in the Forest, L.P. v. Montgomery Cnty.*, 365 S.W.3d 314, 316-17 (Tex. 2012).

[7] *Id*; *Perkins v. Crittenden*, 462 S.W.2d 565, 568 (Tex. 1970).

3

Rule 1006 applies to documents, not testimony.[8]

ORDER:

Sustained ✓          Overruled_____

Also, the evidence Plaintiff attempts to summarize is testimony Alonzo and Pappillion provided under oath. Any "summary" of that testimony is hearsay. Hearsay statements are not competent summary-judgment evidence.[9]

ORDER:

Sustained ✓          Overruled_____

In addition, allowing Plaintiff to take advantage of Rule 1006 in this fashion would undermine long-standing rules requiring parties to specifically cite summary judgment evidence. When presenting summary-judgment proof, a party must specifically identify the supporting proof that it wants the court to consider.[10] Summaries do not excuse Plaintiff of its obligation to specifically identify evidence that supports its arguments.

ORDER:

Sustained ✓          Overruled_____

---

[8] *United States v. Winn*, 948 F.2d 145, 158 (5th Cir. 1991) (Summary of purely testimonial evidence is not within purview of rule which provides that contents of voluminous writings, may be presented in form of chart, summary or calculation.)

[9] *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008); *Southland Corp. v. Lewis*, 940 S.W.2d 83, 85 (Tex. 1997); *Fid. & Cas. Co. v. Burts Bros.*, 744 S.W.2d 219, 224 (Tex. App.—Houston [1st Dist.] 1987, writ denied).

[10] *Arredondo v. Rodriguez*, 198 S.W.3d 236, 238–39 (Tex. App.—San Antonio 2006, no pet.).

4

Finally, even if Rule 1006 applied to transcripts of testimony, to take advantage of Rule 1006, Plaintiff must prove that records are (1) voluminous; (2) have been made available to the opponent for inspection; and (3) are admissible.[11] Plaintiff has established none of these elements. Thus it cannot rely on Rule 1006, even if that rule applied to testimony offered as summary judgment evidence.

ORDER:

Sustained___✓___          Overruled_____

**D.    Alonzo and Pappillion have not demonstrated that they have personal knowledge of the relevant facts.**

The statements by Alonzo and Pappillion fail to establish that the facts related to the providers' work are within Alonzo's and Pappillion's personal knowledge. A witnesses' status cannot establish personal knowledge.[12] Neither Alonzo nor Pappillion have established that they have any personal knowledge of the provider's working condition.[13]

The TWC objects to statements made by Alonzo and Pappillion on the ground that the testimony is not based on personal knowledge. Testimony is not competent summary-judgment evidence unless evidence shows that it is based on the witness's personal knowledge.[14]

_no ruling necessary); moot based on prior ruling sustaining objection to entire chart_

_5.4._

---

[11] *Duncan Dev., Inc. v. Haney*, 634 S.W.2d 811, 812-13 (Tex. 1982)

[12] *Spradlin v. State*, 100 S.W.3d 372, 381, (Tex.App.—Houston [1st Dist.] 2002, no pet.).

[13] Tex. R. Civ. P. 166a.

[14] Tex. R. Civ. P. 166a(f); Tex. R. Evid. 602; *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008); *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996); *Garner v. Long*, 106 S.W.3d 260, 267 (Tex. App.—Fort Worth 2003, no pet.); *Geiselman v. Cramer Fin. Grp., Inc.*, 965 S.W.2d 532, 537 (Tex. App.—Houston [14th Dist.] 1997, no writ).

5

## II. OBJECTIONS TO DECLARATION OF MICHAEL SEALE

Exhibit A to Plaintiff's response to the TWC's motion for summary judgment is an affidavit of Plaintiff's counsel, Michael Seale. It does not present competent summary judgment evidence for the following reasons.

### A. The Court should strike the Seale affidavit because a party's attorney cannot act as a witness regarding disputed factual matters.

The TWC objects to the Seale affidavit on the grounds that the testimony of Plaintiff's attorney is not proper summary-judgment evidence. A person who is an attorney for one of the parties cannot act as a witness about disputed factual matters.[64] In paragraph 3 of Seale's declaration, he makes statements regarding an Internal Revenue Service audit of Plaintiff. In paragraph 4 of the Seale declaration, he makes statements regarding a Department of Labor investigation of Plaintiff.

Based on those paragraphs, Plaintiff argues that there is a fact issue as to whether the TWC properly classified the providers as Plaintiff's employees. Because Seale's statements are not competent summary-judgment evidence, the Court should strike them.

ORDER:

Sustained ✓ *except* Overruled *as to authenticity of attached IRS docs*

### B. Seale's affidavit presents evidence that is not relevant.

The TWC objects to the Seale affidavit on the ground that it is not relevant. The outcome of the IRS and DOL audits are not binding on the TWC and therefore have no

---

[64] Tex. Disc. R. Prof. Conduct 3.08; *Mauze v. Curry*, 861 S.W.2d 869, 870 (Tex. 1993).

6

1510

probative value in this case. To be admissible, evidence must be relevant.[65] Because the evidence is not competent summary-judgment evidence, the Court should strike it.

ORDER:



Sustained_____✓_____ Overruled_____

## C. The Seale affidavit contains hearsay.

The TWC objects to paragraphs 3 and 4 of the Seale affidavit on the grounds that they contain hearsay. Those paragraphs contain detailed summaries of audits by the IRS and DOL that are not supported by admissible evidence. Hearsay statements are not competent summary-judgment evidence.[66]

Because hearsay statements are not competent summary-judgment evidence, the Court should strike them.

ORDER:



Sustained_____✓_____ Overruled_____

## D. Exhibit A(1) to the Seale affidavit is not properly authenticated.

The TWC objects to Exhibit A(1) to the Seale affidavit on the ground that it has not been properly authenticated. Seale's affidavit does not contain the proper predicate for

---

[65] Tex. R. Evid. 402; see *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995).

[66] *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) (affidavits); *Southland Corp. v. Lewis*, 940 S.W.2d 83, 85 (Tex. 1997) (same); *Fid. & Cas. Co. v. Burts Bros.*, 744 S.W.2d 219, 224 (Tex. App.—Houston [1st Dist.] 1987, writ denied) (same).

7

admissibility and the evidence was filed without an affidavit verifying its authenticity. Evidence that is not properly authenticated is not competent summary-judgment evidence.[67] Because the evidence is not competent summary-judgment evidence, the Court should strike it.

ORDER:

Sustained_____          Overruled\_\_\_\_\_

## III.  OBJECTIONS TO EXHIBIT E

Plaintiff attached 20 declarations as Exhibit E to its response to the TWC's motion for summary judgment. The declarations are identical in every respect, save for handwritten portions at the beginning and end of the declarations. The TWC objects to paragraphs in those declarations as follows

### A.      The declarations contain legal conclusions.

The TWC objects to this paragraph on the grounds that it is a legal conclusion. Witnesses must state facts and cannot merely recite legal conclusions.[68] The TWC objects to the following paragraphs on that basis

---

[67] *Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 451-52 (Tex. App.—Dallas 2002, no pet.); *Banowsky v. State Farm Mut. Auto. Ins. Co.*, 876 S.W.2d 509, 513 (Tex. App.—Amarillo 1994, no writ); see, e.g., *Seidner v. Citibank (S.D.) N.A.*, 201 S.W.3d 332, 334-35 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (business-record affidavit must meet requirements of Tex. R. Evid. 902(10)); *Cottrell v. Carrillon Assocs., Ltd.*, 646 S.W.2d 491, 494 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.) (affidavit did not lay proper predicate required by Business Records Act).

[68] *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984). *801 Nolana, Inc. v. RTC Mortg. Trust*, 944 S.W.2d 751, 754 (Tex.App-Corpus Christi, 1997, writ denied.). *McDuff v. Chambers*, 895 S.W.2d 492, 500 (Tex. App.—Waco 1995, writ denied).



5. I am a self-employed business person and an independent contractor.

ORDER:

Sustained ✓ Overruled_____

7. I am not an employee of Health Force.

ORDER:

Sustained ✓ Overruled_____

10. Under the terms of the Independent Contractor Agreement I signed with Health Force, if either party seeks to terminate the contract, it must provide advanced written notice or be liable for damages.

ORDER:

Sustained ✓ Overruled_____

11. My contractual relationship with Health Force recognizes that I may perform independent contractor services for more than one company at a time and I am not prevented from doing so.

ORDER:

Sustained ✓ Overruled_____

9

18. Health Force does not have the right to control the details of or the manner in which I perform my services. Health Force cannot delegate control over the details of or the manner in which I perform my services.

ORDER:

Sustained  V            Overruled_____

21. Health Force does not require me to personally perform my services. I can hire additional or substitute persons to perform services for Health Force's clients or assist me in providing the services.

ORDER:

Sustained  \/            Overruled_____

22. Health Force reports payments made to me on a federal tax Form I 099-MISC. Because I am not an employee, Health Force does not deduct Social Security, Medicare or withhold any taxes from the payments made to me. I am responsible for paying my all taxes. I am responsible for providing my own liability, auto and health insurance. I am not able to submit a claim for unemployment benefits against Health Force because I am not employed by Health Force.

ORDER:

Sustained  \/            Overruled_____

10

23. I am not eligible for employee benefits provided by Health Force to its employees, such as bonuses, paid vacation, or sick pay.

ORDER:

Sustained ✓ _except_ Overruled _if "eligible" means only "I do not actually receive benefits."_

25. Health Force reported no wages for me because I am not an employee and did not earn wages.

ORDER:

Sustained ✓   Overruled_____

## B. The Declarations contain factual conclusions.

The TWC objects to statements made in the Exhibit E declarations on the ground that they contain factual conclusions. A factual conclusion without supporting facts is not competent summary-judgment evidence.[69] Because these statements are not competent summary-judgment evidence, the Court should strike them.

6. I work for myself and consider Health Force to be my agent and marketing tool because Health Force brings me work opportunities without any effort on my part.

ORDER:

Sustained ✓   Overruled_____

---

[69] See *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (affidavits); *Hovorka v. Cmty. Health Sys., Inc.*, 262 S.W.3d 503, 511 (Tex. App.—El Paso 2008, no pet.) (deposition testimony); see, e.g., *Haynes v. City of Beaumont*, 35 S.W.3d 166, 178 (Tex. App.—Texarkana 2000, no pet.) (affidavit that plaintiff was fired because of unacceptable behavior was factual conclusion and incompetent as summary-judgment evidence); *Rizkallah v. Conner*, 952 S.W.2d 580, 587-88 (Tex. App.—Houston [1st Dist.] 1997, no writ) (affidavit that defendant caused problem with plaintiff's car by steam cleaning engine was factual conclusion and incompetent as summary-judgment evidence).

8. I am responsible for my own profits and losses.

ORDER:

*if "responsible" means legally so.*

Sustained___ Overruled___ *if means h-/she has some ability by conduct to affect income, not profits + losses.*

*S.1.*

10. I did not agree to a set time period for providing my services to Health Force's clients.

ORDER:

Sustained_____ Overruled___

11. I am allowed to perform services as an independent contractor for companies that are not clients of Health Force. I am not required to perform services for clients of Heath Force on a full-time basis.

ORDER:

*as to "independent contractor*

Sustained___ Overruled___ *otherwise*

14. Health Force does not set or require that I work a particular schedule for performing my services.

ORDER:

Sustained_____ Overruled___

17. Health Force does not supervise my performances of services.

ORDER:

Sustained_____ Overruled___

12

18. Health Force does not have the right to control the details of or the manner in which I perform my services. Health Force cannot delegate control over the details of or the manner in which I perform my services.

ORDER:

Sustained ✓          Overruled_____

21. Health Force does not require me to personally perform my services. I can hire additional or substitute persons to perform services for Health Force's clients or assist me in providing the services.

ORDER:

Sustained ✓          Overruled ✓ *as to what Health Force "does not require."*

SIGNED this day, 26/August, 2015. _____
The Hon. Stephen Yelenosky
345th Judicial District Court
Travis County, Texas

*as to what "I can" do because it is a legal conclusion if intended to mean the legal right to do and, it is speculation because it does not say he/she has ever done this.*

13

Filed in The District Court
of Travis County, Texas

AUG 2 6 2015

At_____ //i//    A M.
Velva L. Price, District Clerk

CAUSE NO. D-1-GN-09-001957

| | |
|---|---|
| **TOCHRIL, INC.,** | **IN THE DISTRICT COURT** |
| **Plaintiff,** | |
| **v.** | **53ʳᵈ JUDICIAL DISTRICT** |
| **TEXAS WORKFORCE COMMISSION,** | |
| **Defendants.** | **TRAVIS COUNTY, TEXAS** |

### ORDER GRANTING TEXAS WORKFORCE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

On August 20, 2015, the Court considered the Texas Workforce Commission's (TWC) Motion for Summary Judgment. After considering the summary judgment evidence, arguments presented, the pleadings, the response, the reply, the affidavits, the objections and other evidence on file, the Court GRANTS the TWC's motion for summary judgment.

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED** that the TWC's Motion for Summary Judgment is GRANTED; that Plaintiff takes nothing on any claim against the TWC; and that Plaintiff's case is dismissed, in its entirety, with prejudice. All costs shall be borne by the party incurring same. This is a final judgment disposing of all claims and all parties. All other relief not herein granted is denied.

SIGNED this day, _Augvst 25_, 2015. _____

The Hon. Stephen Yelenosky
345ᵗʰ Judicial District Court
Travis County, Texas

004186315

KeyCite Yellow Flag - Negative Treatment
Proposed Regulation

Texas Administrative Code
  Title 40. Social Services and Assistance
    Part 20. Texas Workforce Commission
      Chapter 815. Unemployment Insurance
        Subchapter C. Tax Provisions

40 TAC § 815.134
Tex. Admin. Code tit. 40, § 815.134

§ 815.134. Employment Status: Employee or Independent Contractor

[Currentness]

Subject to specific inclusions and exceptions to employment enumerated in Chapter 201 of the Act, the Commission shall use the guidelines referenced in § 821.5 of this title as the official guidelines for use in determining employment status.

**Credits**
**Source:** The provisions of this § 815.134 adopted to be effective February 19, 2007, 32 TexReg 628.

Current through 40 Tex.Reg. No. 9012, dated December 11, 2015, as effective on or before December 18, 2015

40 TAC § 815.134, 40 TX ADC § 815.134

**End of Document**                                        © 2015 Thomson Reuters. No claim to original U.S. Government Works.

 KeyCite Yellow Flag - Negative Treatment

Proposed Regulation

> Texas Administrative Code
> Title 40. Social Services and Assistance
> Part 20. Texas Workforce Commission
> Chapter 821. Texas Payday Rules
> Subchapter A. General Provisions

40 TAC § 821.5

Tex. Admin. Code tit. 40, § 821.5

§ 821.5. Employment Status: Employee or Independent Contractor

Currentness

The Commission adopts the following form, Form C-8, as its official guideline for use in determining employment status.

Figure: 40 TAC §821.5

## EMPLOYMENT STATUS – A COMPARATIVE APPROACH

Under the common law test, a worker is an employee if the purchaser of that worker's service has the right to direct or control the worker, both as to the final results and as to the details of when, where, and how the work is done. Control need not actually be exercised; rather, if the service recipient has the *right* to control, employment may be shown.

Depending upon the type of business and the services performed, not all 20 common law factors may apply. In addition, the weight assigned to a specific factor may vary depending on the facts of the case.

If an employment relationship exists, it does not matter that the employee is called something different, such as agent, contract laborer, subcontractor, or independent contractor.

1. **INSTRUCTIONS:**
An Employee receives instructions about when, where and how the work is to be performed.
*An Independent Contractor does the job his or her own way with few, if any, instructions as to the details or methods of the work.*

2. **TRAINING:**
Employees are often trained by a more experienced employee or are required to attend meetings or take training courses.
*An Independent Contractor uses his or her own methods and thus need not receive training from the purchaser of those services.*

3. **INTEGRATION:**
Services of an Employee are usually merged into the firm's overall operation; the firm's success depends on those Employee services.
*An Independent Contractor's services are usually separate from the client's business and are not integrated or merged into it.*

4. **SERVICES RENDERED PERSONALLY:**
An Employee's services must be rendered personally; Employees do not hire their own substitutes or delegate work to them.
*A true Independent Contractor is able to assign another to do the job in his or her place and need not perform services personally.*

5. **HIRING, SUPERVISING & PAYING HELPERS:**
An Employee may act as a foreman for the employer but, if so, helpers are paid with the employer's funds.
*Independent Contractors select, hire, pay and supervise any helpers used and are responsible for the results of the helpers' labor.*

6. **CONTINUING RELATIONSHIP:**
An Employee often continues to work for the same employer month after month or year after year.
*An Independent Contractor is usually hired to do one job of limited or indefinite duration and has no expectation of continuing work.*

7. **SET HOURS OF WORK:**
An Employee may work "on call" or during hours and days as set by the employer.
*A true Independent Contractor is the master of his or her own time and works the days and hours he or she chooses.*

11. **ORAL OR WRITTEN REPORTS:**
An Employee may be required to submit regular oral or written reports about the work in progress.
*An Independent Contractor is usually not required to submit regular oral or written reports about the work in progress.*

12. **PAYMENT BY THE HOUR, WEEK OR MONTH:**
An Employee is typically paid by the employer in regular amounts at stated intervals, such as by the hour or week.
*An Independent Contractor is normally paid by the job, either a negotiated flat rate or upon submission of a bid.*

13. **PAYMENT OF BUSINESS & TRAVEL EXPENSE:**
An Employee's business and travel expenses are either paid directly or reimbursed by the employer.
*Independent Contractors normally pay all of their own business and travel expenses without reimbursement.*

14. **FURNISHING TOOLS & EQUIPMENT:**
Employees are furnished all necessary tools, materials and equipment by their employer.
*An Independent Contractor ordinarily provides all of the tools and equipment necessary to complete the job.*

15. **SIGNIFICANT INVESTMENT:**
An Employee generally has little or no investment in the business. Instead, an Employee is economically dependent on the employer.
*True Independent Contractors usually have a substantial financial investment in their independent business.*

16. **REALIZE PROFIT OR LOSS:**
An Employee does not ordinarily realize a profit or loss in the business. Rather, Employees are paid for services rendered.
*An Independent Contractor can either realize a profit or suffer a loss depending on the management of expenses and revenues.*

17. **WORKING FOR MORE THAN ONE FIRM AT A TIME:**
An Employee ordinarily works for one employer at a time and may be prohibited from joining a competitor.
*An Independent Contractor often works for more than one client or firm at the same time and is not subject to a non-competition rule.*

**8. FULL TIME REQUIRED:**

An Employee ordinarily devotes full-time service to the employer, or the employer may have a priority on the Employee's time.

*A true Independent Contractor cannot be required to devote full-time service to one firm exclusively.*

**9. LOCATION WHERE SERVICES PERFORMED:**

Employment is indicated if the employer has the right to mandate where services are performed

*Independent Contractors ordinarily work where they choose. The workplace may be away from the client's premises.*

**10. ORDER OR SEQUENCE SET:**

An Employee performs services in the order or sequence set by the employer. This shows control by the employer.

*A true Independent Contractor is concerned only with the finished product and sets his or her own order or sequence of work.*

**C-8(994) Inv. No. 518975**

**18. MAKING SERVICE AVAILABLE TO THE PUBLIC:**

An Employee does not make his or her services available to the public except through the employer's company.

*An Independent Contractor may advertise, carry business cards, hang out a shingle or hold a separate business license.*

**19. RIGHT TO DISCHARGE WITHOUT LIABILITY:**

An Employee can be discharged at any time without liability on the employer's part.

*If the work meets the contract terms, an Independent Contractor cannot be fired without liability for breach of contract.*

**20. RIGHT TO QUIT WITHOUT LIABILITY:**

An Employee may quit work at any time without liability on the Employee's part.

*An Independent Contractor is legally responsible for job completion and, on quitting, becomes liable for breach of contract.*

**Credits**

**Source:** The provisions of this § 821.5 adopted to be effective June 1, 1998, 23 TexReg 5732; amended to be effective March 13, 2007, 32 TexReg 1328.

Current through 40 Tex.Reg. No. 9012, dated December 11, 2015, as effective on or before December 18, 2015

40 TAC § 821.5, 40 TX ADC § 821.5

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Rules Annotated
    Texas Rules of Civil Procedure
        Part II. Rules of Practice in District and County Courts
            Section 8. Pre-Trial Procedure (Refs & Annos)

TX Rules of Civil Procedure, Rule 166a

Rule 166a. Summary Judgment

Currentness

**(a) For Claimant.** A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the adverse party has appeared or answered, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to amount of damages.

**(b) For Defending Party.** A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

**(c) Motion and Proceedings Thereon.** The motion for summary judgment shall state the specific grounds therefor. Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing. Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response. No oral testimony shall be received at the hearing. The judgment sought shall be rendered forthwith if (i) the deposition transcripts, interrogatory answers, and other discovery responses referenced or set forth in the motion or response, and (ii) the pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response. Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal. A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.

**(d) Appendices, References and Other Use of Discovery Not Otherwise on File.** Discovery products not on file with the clerk may be used as summary judgment evidence if copies of the material, appendices containing the evidence, or a notice containing specific references to the discovery or specific references to other instruments, are filed and served on all parties together with a statement of intent to use the specified discovery as summary judgment proofs: (i) at least twenty-one days before the hearing if such proofs are to be used to support the summary judgment; or (ii) at least seven days before the hearing if such proofs are to be used to oppose the summary judgment.

**(e) Case not Fully Adjudicated on Motion.** If summary judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the judge may at the hearing examine the pleadings and the evidence on file, interrogate counsel,

ascertain what material fact issues exist and make an order specifying the facts that are established as a matter of law, and directing such further proceedings in the action as are just.

**(f) Form of Affidavits; Further Testimony.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend.

**(g) When Affidavits Are Unavailable.** Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**(h) Affidavits Made in Bad Faith.** Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

**(i) No-Evidence Motion.** After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.

**Credits**

Oct. 12, 1949, eff. March 1, 1950. Amended by orders of Oct. 1, 1951, eff. March 1, 1952; July 20, 1966, eff. Jan. 1, 1967; July 21, 1970, eff. Jan. 1, 1971; July 11, 1977, eff. Jan. 1, 1978; June 10, 1980, eff. Jan. 1, 1981; Dec. 5, 1983, eff. April 1, 1984; July 15, 1987, eff. Jan. 1, 1988; April 24, 1990, eff. Sept. 1, 1990; Aug. 15, 1997, eff. Sept. 1, 1997.

Notes of Decisions (8188)

Vernon's Ann. Texas Rules Civ. Proc., Rule 166a, TX R RCP Rule 166a
Rules of Civil Procedure, Rules of Evidence, and Rules of Appellate Procedure are current with amendments received through September 1, 2015. Bar Rules, Rules of Disciplinary Procedure, Code of Judicial Conduct, and Rules of Judicial Administration are current with amendments received through September 1, 2015. Other state court rules and selected county rules are current with rules verified through June 1, 2015.

Vernon's Texas Rules Annotated
    Texas Rules of Evidence (Refs & Annos)
        Article X. Contents of Writings, Recordings, and Photographs (Refs & Annos)

TX Rules of Evidence, Rule 1006

Rule 1006. Summaries to Prove Content

[Currentness]

The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

**Credits**
Eff. March 1, 1998. Amended by orders of Supreme Court March 10, 2015 and Court of Criminal Appeals March 12, 2015, eff. April 1, 2015.

Notes of Decisions (16)

Rules of Evid., Rule 1006, TX R EVID Rule 1006
Rules of Civil Procedure, Rules of Evidence, and Rules of Appellate Procedure are current with amendments received through September 1, 2015. Bar Rules, Rules of Disciplinary Procedure, Code of Judicial Conduct, and Rules of Judicial Administration are current with amendments received through September 1, 2015. Other state court rules and selected county rules are current with rules verified through June 1, 2015.

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Code of Federal Regulations
  Title 20. Employees' Benefits
    Chapter V. Employment and Training Administration, Department of Labor
      Part 639. Worker Adjustment and Retraining Notification (Refs & Annos)

20 C.F.R. § 639.3

§ 639.3 Definitions.

Currentness

(a) Employer.

(1) The term "employer" means any business enterprise that employs—

(i) 100 or more employees, excluding part-time employees; or

(ii) 100 or more employees, including part-time employees, who in the aggregate work at least 4,000 hours per week, exclusive of hours of overtime.

Workers on temporary layoff or on leave who have a reasonable expectation of recall are counted as employees. An employee has a "reasonable expectation of recall" when he/she understands, through notification or through industry practice, that his/her employment with the employer has been temporarily interrupted and that he/she will be recalled to the same or to a similar job. The term "employer" includes non-profit organizations of the requisite size. Regular Federal, State, local and federally recognized Indian tribal governments are not covered. However, the term "employer" includes public and quasi-public entities which engage in business (i.e., take part in a commercial or industrial enterprise, supply a service or good on a mercantile basis, or provide independent management of public assets, raising revenue and making desired investments), and which are separately organized from the regular government, which have their own governing bodies and which have independent authority to manage their personnel and assets.

(2) Under existing legal rules, independent contractors and subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as a part of the parent or contracting company depending upon the degree of their independence from the parent. Some of the factors to be considered in making this determination are (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.

(3) Workers, other than part-time workers, who are exempt from notice under section 4 of WARN are nonetheless counted as employees for purposes of determining coverage as an employer.

(4) An employer may have one or more sites of employment under common ownership or control. An example would be a major auto maker which has dozens of automobile plants throughout the country. Each plant would be considered a site of employment, but there is only one "employer", the auto maker.

(b) Plant closing. The term "plant closing" means the permanent or temporary shutdown of a "single site of employment", or one or more "facilities or operating units" within a single site of employment, if the shutdown results in an "employment loss" during any 30–day period at the single site of employment for 50 or more employees, excluding any part-time employees. An employment action that results in the effective cessation of production or the work performed by a unit, even if a few employees remain, is a shutdown. A "temporary shutdown" triggers the notice requirement only if there are a sufficient number of terminations, layoffs exceeding 6 months, or reductions in hours of work as specified under the definition of "employment loss."

(c) Mass layoff.

(1) The term "mass layoff" means a reduction in force which first, is not the result of a plant closing, and second, results in an employment loss at the single site of employment during any 30–day period for:

(i) At least 33 percent of the active employees, excluding part-time employees, and

(ii) At least 50 employees, excluding part-time employees.

Where 500 or more employees (excluding part-time employees) are affected, the 33% requirement does not apply, and notice is required if the other criteria are met. Plant closings involve employment loss which results from the shutdown of one or more distinct units within a single site or the entire site. A mass layoff involves employment loss, regardless of whether one or more units are shut down at the site.

(2) Workers, other than part-time workers, who are exempt from notice under section 4 of WARN are nonetheless counted as employees for purposes of determining coverage as a plant closing or mass layoff. For example, if an employer closes a temporary project on which 10 permanent and 40 temporary workers are employed, a covered plant closing has occurred although only 10 workers are entitled to notice.

(d) Representative. The term "representative" means an exclusive representative of employees within the meaning of section 9(a) or 8(f) of the National Labor Relations Act or section 2 of the Railway Labor Act.

(e) Affected employees. The term "affected employees" means employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer. This includes individually identifiable employees who will likely lose their jobs because of bumping rights or other factors, to the extent that such individual workers reasonably can be identified at the time notice is required to be given. The term "affected employees" includes managerial and supervisory employees, but does not include business partners. Consultant or contract employees who have a separate employment relationship with another employer and are paid by that other employer, or who are self-employed, are not "affected employees" of the business to which they are assigned. In addition, for purposes of determining whether coverage thresholds are met, either incumbent workers in jobs being eliminated or, if known 60 days in advance, the actual employees who suffer an employment loss may be counted.

(f) Employment loss.

(1) The term "employment loss" means (i) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (ii) a layoff exceeding 6 months, or (iii) a reduction in hours of work of individual employees of more than 50% during each month of any 6–month period.

(2) Where a termination or a layoff (see paragraphs (f)(1)(i) and (ii) of this section) is involved, an employment loss does not occur when an employee is reassigned or transferred to employer-sponsored programs, such as retraining or job search activities, as long as the reassignment does not constitute a constructive discharge or other involuntary termination.

(3) An employee is not considered to have experienced an employment loss if the closing or layoff is the result of the relocation or consolidation of part or all of the employer's business and, prior to the closing or layoff—

(i) The employer offers to transfer the employee to a different site of employment within a reasonable commuting distance with no more than a 6–month break in employment, or

(ii) The employer offers to transfer the employee to any other site of employment regardless of distance with no more than a 6–month break in employment, and the employee accepts within 30 days of the offer or of the closing or layoff, whichever is later.

(4) A "relocation or consolidation" of part or all of an employer's business, for purposes of paragraph § 639.3(h)(4), means that some definable business, whether customer orders, product lines, or operations, is transferred to a different site of employment and that transfer results in a plant closing or mass layoff.

(g) Unit of local government. The term "unit of local government" means any general purpose political subdivision of a State, which has the power to levy taxes and spend funds and which also has general corporate and police powers. When a covered employment site is located in more than one unit of local government, the employer must give notice to the unit to which it determines it directly paid the highest taxes for the year preceding the year for which the determination is made. All local taxes directly paid to the local government should be aggregated for this purpose.

(h) Part-time employee. The term "part-time" employee means an employee who is employed for an average of fewer than 20 hours per week or who has been employed for fewer than 6 of the 12 months preceding the date on which notice is required, including workers who work full-time. This term may include workers who would traditionally be understood as "seasonal" employees. The period to be used for calculating whether a worker has worked "an average of fewer than 20 hours per week" is the shorter of the actual time the worker has been employed or the most recent 90 days.

(i) Single site of employment.

(1) A single site of employment can refer to either a single location or a group of contiguous locations. Groups of structures which form a campus or industrial park, or separate facilities across the street from one another, may be considered a single site of employment.

(2) There may be several single sites of employment within a single building, such as an office building, if separate employers conduct activities within such a building. For example, an office building housing 50 different businesses will contain 50 single sites of employment. The offices of each employer will be its single site of employment.

(3) Separate buildings or areas which are not directly connected or in immediate proximity may be considered a single site of employment if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment. An example is an employer who manages a number of warehouses in an area but who regularly shifts or rotates the same employees from one building to another.

(4) Non-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site. For example, assembly plants which are located on opposite sides of a town and which are managed by a single employer are separate sites if they employ different workers.

(5) Contiguous buildings owned by the same employer which have separate management, produce different products, and have separate workforces are considered separate single sites of employment.

(6) For workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes.

(7) Foreign sites of employment are not covered under WARN. U.S. workers at such sites are counted to determine whether an employer is covered as an employer under § 639.3(a).

(8) The term "single site of employment" may also apply to truly unusual organizational situations where the above criteria do not reasonably apply. The application of this definition with the intent to evade the purpose of the Act to provide notice is not acceptable.

(j) Facility or operating unit. The term "facility" refers to a building or buildings. The term "operating unit" refers to an organizationally or operationally distinct product, operation, or specific work function within or across facilities at the single site.

(k) State dislocated worker unit. The term "State dislocated worker unit" means a unit designated or created in each State by the Governor under title III of the Job Training Partnership Act, as amended by EDWAA.

(l) State. For the purpose of WARN, the term "State" includes the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, and the U.S. Virgin Islands.

SOURCE: 54 FR 16064, April 20, 1989, unless otherwise noted.

AUTHORITY: 29 U.S.C. 2107(a).

Notes of Decisions (226)

Current through December 24, 2015; 80 FR 80290.

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

---

### ISSUE

In the situations described below, are the individuals employees under the common law rules for purposes of the Federal Insurance Contributions Act (FICA), the Federal Unemployment Tax Act (FUTA), and the Collection of Income Tax at Source on Wages (chapters 21, 23, and 24 respectively, subtitle C, Internal Revenue Code)? These situations illustrate the application of section 530(d) of the Revenue Act of 1978, 1978-3 (Vol. 1) C.B. 119 (the 1978 Act), which was added by section 1706(a) of the Tax Reform Act of 1986, 1986- 3 (Vol. 1) C.B. 698 (the 1986 Act) (generally effective for services performed and remuneration paid after December 31, 1986).

### FACTS

In each factual situation, an individual worker (Individual), pursuant to an arrangement between one person (Firm) and another person (Client), provides services for the Client as an engineer, designer, drafter, computer programmer, systems analyst, or other similarly skilled worker engaged in a similar line of work.

Situation 1

The Firm is engaged in the business of providing temporary technical services to its clients. The Firm maintains a roster of workers who are available to provide technical services to prospective clients. The Firm does not train the workers but determines the services that the workers are qualified to perform based on information submitted by the workers.

The Firm has entered into a contract with the Client. The contract states that the Firm is to provide the Client with workers to perform computer programming services meeting specified qualifications for a particular project. The Individual, a computer programmer, enters into a contract with the Firm to perform services as a computer programmer for the Client's project, which is expected to last less than one year. The Individual is one of several programmers provided by the Firm to the Client. The Individual has not been an employee of or performed services for the Client (or any predecessor or affiliated corporation of the Client) at any time preceding the time at which the Individual begins performing services for the Client. Also, the Individual has not been an employee of or performed services for or on behalf of the Firm at any time preceding the time at which the Individual begins performing services for the Client. The Individual's contract with the Firm states that the Individual is an independent contractor with respect to services performed on behalf of the Firm for the Client.

The Individual and the other programmers perform the services under the Firm's contract with the Client. During the time the Individual is performing services for the Client, even though the Individual retains the right to perform services for other persons, substantially all of the Individual's working time is devoted to performing services for the Client. A significant portion of the services are performed on the Client's premises. The Individual reports to the Firm by accounting for time worked and describing the progress of the work. The Firm pays the Individual and regularly charges the Client for the services performed by the Individual. The Firm generally does not pay individuals who perform services for the Client unless the Firm provided such individuals to the Client.

The work of the Individual and other programmers is regularly reviewed by the Firm. The review is based primarily on reports by the Client about the performance of these workers. Under the contract between the Individual and the Firm, the Firm may terminate its relationship with the Individual if the review shows that he or she is failing to perform the services contracted for by the Client. Also, the Firm will replace the Individual with another worker if the Individual's services are unacceptable to the Client. In such a case, however, the Individual will nevertheless receive his or her hourly pay for the work completed.

Finally, under the contract between the Individual and the Firm, the Individual is prohibited from performing services directly for the Client and, under the contract between the

Firm and the Client, the Client is prohibited from receiving services from the Individual for a period of three months following the termination of services by the Individual for the Client on behalf of the Firm.

### Situation 2

The Firm is a technical services firm that supplies clients with technical personnel. The Client requires the services of a systems analyst to complete a project and contacts the Firm to obtain such an analyst. The Firm maintains a roster of analysts and refers such an analyst, the Individual, to the Client. The Individual is not restricted by the Client or the Firm from providing services to the general public while performing services for the Client and in fact does perform substantial services for other persons during the period the Individual is working for the Client. Neither the Firm nor the Client has priority on the services of the Individual. The Individual does not report, directly or indirectly, to the Firm after the beginning of the assignment to the Client concerning (1) hours worked by the Individual, (2) progress on the job, or (3) expenses incurred by the Individual in performing services for the Client. No reports (including reports of time worked or progress on the job) made by the Individual to the Client are provided by the Client to the Firm.

If the Individual ceases providing services for the Client prior to completion of the project or if the Individual's work product is otherwise unsatisfactory, the Client may seek damages from the Individual. However, in such circumstances, the Client may not seek damages from the Firm, and the Firm is not required to replace the Individual. The Firm may not terminate the services of the Individual while he or she is performing services for the Client and may not otherwise affect the relationship between the Client and the Individual. Neither the Individual nor the Client is prohibited for any period after termination of the Individual's services on this job from contracting directly with the other. For referring the Individual to the Client, the Firm receives a flat fee that is fixed prior to the Individual's commencement of services for the Client and is unrelated to the number of hours and quality of work performed by the Individual. The Individual is not paid by the Firm either directly or indirectly. No

payment made by the Client to the Individual reduces the amount of the fee that the Client is otherwise required to pay the Firm. The Individual is performing services that can be accomplished without the Individual's receiving direction or control as to hours, place of work, sequence, or details of work.

### Situation 3

The Firm, a company engaged in furnishing client firms with technical personnel, is contacted by the Client, who is in need of the services of a drafter for a particular project, which is expected to last less than one year. The Firm recruits the Individual to perform the drafting services for the Client. The Individual performs substantially all of the services for the Client at the office of the Client, using materials and equipment of the Client. The services are performed under the supervision of employees of the Client. The Individual reports to the Client on a regular basis. The Individual is paid by the Firm based on the number of hours the Individual has worked for the Client, as reported to the Firm by the Client or as reported by the Individual and confirmed by the Client. The Firm has no obligation to pay the Individual if the Firm does not receive payment for the Individual's services from the Client. For recruiting the Individual for the Client, the Firm receives a flat fee that is fixed prior to the Individual's commencement of services for the Client and is unrelated to the number of hours and quality of work performed by the Individual. However, the Firm does receive a reasonable fee for performing the payroll function. The Firm may not direct the work of the Individual and has no responsibility for the work performed by the Individual. The Firm may not terminate the services of the Individual. The Client may terminate the services of the Individual without liability to either the Individual or the Firm. The Individual is permitted to work for another firm while performing services for the Client, but does in fact work for the Client on a substantially full-time basis.

### LAW AND ANALYSIS

This ruling provides guidance concerning the factors that are used to determine whether an employment relationship exists between the Individual and the Firm for federal employment tax purposes and applies those factors to the given factual situations to determine whether the

Individual is an employee of the Firm for such purposes. The ruling does not reach any conclusions concerning whether an employment relationship for federal employment tax purposes exists between the Individual and the Client in any of the factual situations.

Analysis of the preceding three fact situations requires an examination of the common law rules for determining whether the Individual is an employee with respect to either the Firm or the Client, a determination of whether the Firm or the Client qualifies for employment tax relief under section 530(a) of the 1978 Act, and a determination of whether any such relief is denied the Firm under section 530(d) of the 1978 Act (added by section 1706 of the 1986 Act).

An individual is an employee for federal employment tax purposes if the individual has the status of an employee under the usual common law rules applicable in determining the employer-employee relationship. Guides for determining that status are found in the following three substantially similar sections of the Employment Tax Regulations: sections 31.3121(d)-1(c); 31.3306(i)- 1; and 31.3401(c)-1.

These sections provide that generally the relationship of employer and employee exists when the person or persons for whom the services are performed have the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but as to how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if the employer has the right to do so.

Conversely, these sections provide, in part, that individuals (such as physicians, lawyers, dentists, contractors, and subcontractors) who follow an independent trade, business, or profession, in which they offer their services to the public, generally are not employees.

Finally, if the relationship of employer and employee exists, the designation or description of the relationship by the parties as anything other than that of employer and employee is immaterial. Thus, if such a relationship exists, it is of no consequence that the employee is designated as a partner, coadventurer, agent, independent contractor, or the like.

As an aid to determining whether an individual is an employee under the common law rules, twenty factors or elements have been identified as indicating whether sufficient control is present to establish an employer- employee relationship. The twenty factors have been developed based on an examination of cases and rulings considering whether an individual is an employee. The degree of importance of each factor varies depending on the occupation and the factual context in which the services are performed. The twenty factors are designed only as guides for determining whether an individual is an employee; special scrutiny is required in applying the twenty factors to assure that formalistic aspects of an arrangement designed to achieve a particular status do not obscure the substance of the arrangement (that is, whether the person or persons for whom the services are performed exercise sufficient control over the individual for the individual to be classified as an employee). The twenty factors are described below:

1. *Instructions.* A worker who is required to comply with other persons' instructions about when, where, and how he or she is to work is ordinarily an employee. This control factor is present if the person or persons for whom the services are performed have the *right* to require compliance with instructions. See, for example, Rev. Rul. 68-598, 1968-2 C.B. 464, and Rev. Rul. 66- 381, 1966-2 C.B. 449.

2. *Training.* Training a worker by requiring an experienced employee to work with the worker, by corresponding with the worker, by requiring the worker to attend meetings, or by using other methods, indicates that the person or persons for whom the services are performed want the services performed in a particular method or manner. See Rev. Rul. 70-630, 1970-2 C.B. 229.

3. *Integration.* Integration of the worker's services into the business operations generally shows that the worker is subject to direction and control. When the success or continuation of a business depends to an appreciable degree upon the performance of certain services, the workers who perform those services must necessarily be

subject to a certain amount of control by the owner of the business. See *United States v. Silk,* 331 U.S. 704 (1947), 1947-2 C.B. 167.

4. *Services Rendered Personally.* If the services must be rendered personally, presumably the person or persons for whom the services are performed are interested in the methods used to accomplish the work as well as in the results. See Rev. Rul. 55-695, 1955-2 C.B. 410.

5. *Hiring, Supervising, and Paying Assistants.* If the person or persons for whom the services are performed hire, supervise, and pay assistants, that factor generally shows control over the workers on the job. However, if one worker hires, supervises, and pays the other assistants pursuant to a contract under which the worker agrees to provide materials and labor and under which the worker is responsible only for the attainment of a result, this factor indicates an independent contractor status. Compare Rev. Rul. 63-115, 1963-1 C.B. 178, with Rev. Rul. 55-593, 1955-2 C.B. 610.

6. *Continuing Relationship.* A continuing relationship between the worker and the person or persons for whom the services are performed indicates that an employer-employee relationship exists. A continuing relationship may exist where work is performed at frequently recurring although irregular intervals. See *United States v. Silk.*

7. *Set Hours of Work.* The establishment of set hours of work by the person or persons for whom the services are performed is a factor indicating control. See Rev. Rul. 73-591, 1973-2 C.B. 337.

8. *Full Time Required.* If the worker must devote substantially full time to the business of the person or persons for whom the services are performed, such person or persons have control over the amount of time the worker spends working and impliedly restrict the worker from doing other gainful work. An independent contractor, on the other hand, is free to work when and for whom he or she chooses. See Rev. Rul. 56- 694, 1956-2 C.B. 694.

9. *Doing Work on Employer's Premises.* If the work is performed on the premises of the person or persons for whom the services are performed, that factor suggests control over the worker, especially if the work could be done elsewhere. Rev. Rul. 56-660, 1956-2 C.B. 693. Work done off the premises of the person or persons receiving the services, such as at the office of the worker, indicates some freedom from control. However, this fact by itself does not mean that the worker is not an employee. The importance of this factor depends on the nature of the service involved and the extent to which an employer generally would require that employees perform such services on the employer's premises. Control over the place of work is indicated when the person or persons for whom the services are performed have the right to compel the worker to travel a designated route, to canvass a territory within a certain time, or to work at specific places as required. See Rev. Rul. 56-694.

10. *Order or Sequence Set.* If a worker must perform services in the order or sequence set by the person or persons for whom the services are performed, that factor shows that the worker is not free to follow the worker's own pattern of work but must follow the established routines and schedules of the person or persons for whom the services are performed. Often, because of the nature of an occupation, the person or persons for whom the services are performed do not set the order of the services or set the order infrequently. It is sufficient to show control, however, if such person or persons retain the right to do so. See Rev. Rul. 56-694.

11. *Oral or Written Reports.* A requirement that the worker submit regular or written reports to the person or persons for whom the services are performed indicates a degree of control. See Rev. Rul. 70-309, 1970-1 C.B. 199, and Rev. Rul. 68- 248, 1968-1 C.B. 431.

12. *Payment by Hour, Week, Month.* Payment by the hour, week, or month generally points to an employer-employee relationship, provided that this method of payment is not just a convenient way of paying a lump sum agreed upon as the cost of a job. Payment made by the job or on a straight commission generally indicates that the worker is an independent contractor. See Rev. Rul. 74-389, 1974-2 C.B. 330.

13. *Payment of Business and/or Traveling Expenses.* If the person or persons for whom the services are performed ordinarily pay the worker's business and/or traveling expenses, the worker is ordinarily an employee. An employer, to be able to control expenses, generally retains the right to regulate and direct the worker's

business activities. See Rev. Rul. 55-144, 1955-1 C.B. 483.

14. *Furnishing of Tools and Materials.* The fact that the person or persons for whom the services are performed furnish significant tools, materials, and other equipment tends to show the existence of an employer- employee relationship. See Rev. Rul. 71-524, 1971-2 C.B. 346.

15. *Significant Investment.* If the worker invests in facilities that are used by the worker in performing services and are not typically maintained by employees (such as the maintenance of an office rented at fair value from an unrelated party), that factor tends to indicate that the worker is an independent contractor. On the other hand, lack of investment in facilities indicates dependence on the person or persons for whom the services are performed for such facilities and, accordingly, the existence of an employer-employee relationship. See Rev. Rul. 71-524. Special scrutiny is required with respect to certain types of facilities, such as home offices.

16. *Realization of Profit or Loss.* A worker who can realize a profit or suffer a loss as a result of the worker's services (in addition to the profit or loss ordinarily realized by employees) is generally an independent contractor, but the worker who cannot is an employee. See Rev. Rul. 70-309. For example, if the worker is subject to a real risk of economic loss due to significant investments or a bona fide liability for expenses, such as salary payments to unrelated employees, that factor indicates that the worker is an independent contractor. The risk that a worker will not receive payment for his or her services, however, is common to both independent contractors and employees and thus does not constitute a sufficient economic risk to support treatment as an independent contractor.

17. *Working for More Than One Firm at a Time.* If a worker performs more than de minimis services for a multiple of unrelated persons or firms at the same time, that factor generally indicates that the worker is an independent contractor. See Rev. Rul. 70-572, 1970-2 C.B. 221. However, a worker who performs services for more than one person may be an employee of each of the persons, especially where such persons are part of the same service arrangement.

18. *Making Service Available to General Public.* The fact that a worker makes his or her services available to the general public on a regular and consistent basis indicates an independent contractor relationship. See Rev. Rul. 56-660.

19. *Right to Discharge.* The right to discharge a worker is a factor indicating that the worker is an employee and the person possessing the right is an employer. An employer exercises control through the threat of dismissal, which causes the worker to obey the employer's instructions. An independent contractor, on the other hand, cannot be fired so long as the independent contractor produces a result that meets the contract specifications. Rev. Rul. 75-41, 1975-1 C.B. 323.

20. *Right to Terminate.* If the worker has the right to end his or her relationship with the person for whom the services are performed at any time he or she wishes without incurring liability, that factor indicates an employer-employee relationship. See Rev. Rul. 70-309.

Rev. Rul. 75-41 considers the employment tax status of individuals performing services for a physician's professional service corporation. The corporation is in the business of providing a variety of services to professional people and firms (subscribers), including the services of secretaries, nurses, dental hygienists, and other similarly trained personnel. The individuals who are to perform the services are recruited by the corporation, paid by the corporation, assigned to jobs, and provided with employee benefits by the corporation. Individuals who enter into contracts with the corporation agree they will not contract directly with any subscriber to which they are assigned for at least three months after cessation of their contracts with the corporation. The corporation assigns the individual to the subscriber to work on the subscriber's premises with the subscriber's equipment. Subscribers have the right to require that an individual furnished by the corporation cease providing services to them, and they have the further right to have such individual replaced by the corporation within a reasonable period of time, but the subscribers have no right to affect the contract between the individual and the corporation. The corporation retains the right to discharge the individuals at any time. Rev. Rul. 75-41 concludes that the individuals are

employees of the corporation for federal employment tax purposes.

Rev. Rul. 70-309 considers the employment tax status of certain individuals who perform services as oil well pumpers for a corporation under contracts that characterize such individuals as independent contractors. Even though the pumpers perform their services away from the headquarters of the corporation and are not given day-to-day directions and instructions, the ruling concludes that the pumpers are employees of the corporation because the pumpers perform their services pursuant to an arrangement that gives the corporation the right to exercise whatever control is necessary to assure proper performance of the services; the pumpers' services are both necessary and incident to the business conducted by the corporation; and the pumpers are not engaged in an independent enterprise in which they assume the usual business risks, but rather work in the course of the corporation's trade or business. See also Rev. Rul. 70-630, 1970-2 C.B. 229, which considers the employment tax status of salesclerks furnished by an employee service company to a retail store to perform temporary services for the store.

Section 530(a) of the 1978 Act, as amended by section 269(c) of the Tax Equity and Fiscal Responsibility Act of 1982, 1982-2 C.B. 462, 536, provides, for purposes of the employment taxes under subtitle C of the Code, that if a taxpayer did not treat an individual as an employee for any period, then the individual shall be deemed not to be an employee, unless the taxpayer had no reasonable basis for not treating the individual as an employee. For any period after December 31, 1978, this relief applies only if both of the following consistency rules are satisfied: (1) all federal tax returns (including information returns) required to be filed by the taxpayer with respect to the individual for the period are filed on a basis consistent with the taxpayer's treatment of the individual as not being an employee ("reporting consistency rule"), and (2) the taxpayer (and any predecessor) has not treated any individual holding a substantially similar position as an employee for purposes of the employment taxes for periods beginning after December 31, 1977 ("substantive consistency rule").

The determination of whether any individual who is treated as an employee holds a position substantially similar to the position held by an individual whom the taxpayer would otherwise be permitted to treat as other than an employee for employment tax purposes under section 530(a) of the 1978 Act requires an examination of all the facts and circumstances, including particularly the activities and functions performed by the individuals. Differences in the positions held by the respective individuals that result from the taxpayer's treatment of one individual as an employee and the other individual as other than an employee (for example, that the former individual is a participant in the taxpayer's qualified pension plan or health plan and the latter individual is not a participant in either) are to be disregarded in determining whether the individuals hold substantially similar positions.

Section 1706(a) of the 1986 Act added to section 530 of the 1978 Act a new subsection (d), which provides an exception with respect to the treatment of certain workers. Section 530(d) provides that section 530 shall not apply in the case of an individual who, pursuant to an arrangement between the taxpayer and another person, provides services for such other person as an engineer, designer, drafter, computer programmer, systems analyst, or other similarly skilled worker engaged in a similar line of work. Section 530(d) of the 1978 Act does not affect the determination of whether such workers are employees under the common law rules. Rather, it merely eliminates the employment tax relief under section 530(a) of the 1978 Act that would otherwise be available to a taxpayer with respect to those workers who are determined to be employees of the taxpayer under the usual common law rules. Section 530(d) applies to remuneration paid and services rendered after December 31, 1986.

The Conference Report on the 1986 Act discusses the effect of section 530(d) as follows:

The Senate amendment applies whether the services of [technical service workers] are provided by the firm to only one client during the year or to more than one client, and whether or not such individuals have been designated or treated by the technical services firm as independent contractors, sole proprietors, partners, or employees of a personal service

corporation controlled by such individual. The effect of the provision cannot be avoided by claims that such technical service personnel are employees of personal service corporations controlled by such personnel. For example, an engineer retained by a technical services firm to provide services to a manufacturer cannot avoid the effect of this provision by organizing a corporation that he or she controls and then claiming to provide services as an employee of that corporation.

. . . [T]he provision does not apply with respect to individuals who are classified, under the generally applicable common law standards, as employees of a business that is a client of the technical services firm.

2 H.R. Rep. No. 99-841 (Conf. Rep.), 99th Cong., 2d Sess. II-834 to 835 (1986).

Under the facts of Situation 1, the legal relationship is between the Firm and the Individual, and the Firm retains the right of control to insure that the services are performed in a satisfactory fashion. The fact that the Client may also exercise some degree of control over the Individual does not indicate that the individual is not an employee. Therefore, in Situation 1, the Individual is an employee of the Firm under the common law rules. The facts in Situation 1 involve an arrangement among the Individual, Firm, and Client, and the services provided by the Individual are technical services. Accordingly, the Firm is denied section 530 relief under section 530(d) of the 1978 Act (as added by section 1706 of the 1986 Act), and no relief is available with respect to any employment tax liability incurred in Situation 1.

The analysis would not differ if the facts of Situation 1 were changed to state that the Individual provided the technical services through a personal service corporation owned by the Individual.

In Situation 2, the Firm does not retain any right to control the performance of the services by the Individual and, thus, no employment relationship exists between the Individual and the Firm.

In Situation 3, the Firm does not control the performance of the services of the Individual, and the Firm has no right to affect the relationship between the Client and the Individual. Consequently, no employment relationship exists between the Firm and the Individual.

**HOLDINGS**

*Situation 1.* The Individual is an employee of the Firm under the common law rules. Relief under section 530 of the 1978 Act is not available to the Firm because of the provisions of section 530(d).

*Situation 2.* The Individual is not an employee of the Firm under the common law rules.

*Situation 3.* The Individual is not an employee of the Firm under the common law rules.

Because of the application of section 530(b) of the 1978 Act, no inference should be drawn with respect to whether the Individual in Situations 2 and 3 is an employee of the Client for federal employment tax purposes.